## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 4:15CP-181-JM** |
| | ) | |
| | ) | |
| **MAHMOOD AHMAD, M.D. and** | ) | |
| **UNITED PHARMACY,** | ) | |
| | ) | |
| **Defendants** | ) | |

## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

### SUMMARY JUDGMENT STANDARD

In accordance with Fed.R.Civ.P. 56(a), summary judgment will be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Once the moving party has demonstrated that no genuine issue of material fact exists, the burden is on the opposing party to contradict that demonstration by coming forward with specific, provable facts which establish that there is a triable issue. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011 (*en banc*)). A genuine issue is one which a reasonable fact finder could resolve in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L. Ed.2d 202 (1986).

Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of a suit under the governing law if found favorably to the non-movant that the materiality hurdled is cleared." *Parrilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445, 448 (1st Cir. 1997). Of course, the facts are to be viewed in a light most favorable to the non-movant. *Torgerson v. City of Rochester, supra.*

1

Finally, summary judgment may be granted when there is no dispute as to any material fact and only questions of law remain. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

## MOTION TO DISMISS STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

****

> (d) **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> ****
>
> (6) Failure to state a claim upon which relief can be granted....

## INTRODUCTION

On March 31, 2015, the government filed this civil action seeking penalties pursuant to 21 U.S.C. § 842(a)(5) under the Controlled Substances Act ("CSA"), as amended, 21 U.S.C. § 801, *et. seq.* (the Act). The Complaint (although vague) is pleasantly simple in its allegations and charges. The government claims that Defendant Mahmood Ahmad, M.D. (hereinafter "Dr. Ahmad") operated a pain management clinic and was the registrant of United Pharmacy (hereinafter "United Pharmacy"), a division of United Pain Care, Ltd., (hereinafter "UPC") located in Sherwood, Arkansas. (Complaint, ¶ 4). Further, the Complaint charges that between January 27, 2012 and May 30, 2013, the "defendant" (presumably Dr. Ahmad) purchased controlled substances for the pharmacy which operated within the same building as Dr. Ahmad's pain management clinic. (Complaint, ¶ 5). Moreover, the Complaint alleges that the "defendant" (presumably Dr. Ahmad) ordered the controlled substances in violation of 21 U.S.C. § 842(a)(5).

21 U.S.C. §842(a)(5) provides:

(a)  Unlawful Acts
It shall be unlawful for *any person* –
\*\*\*\*
(5)  to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required under this subchapter or subchapter II of this chapter;...

(Emphasis Added).

In Paragraph 7.a. of the Complaint, the government alleges that the "defendant" (presumably UPC) committed a violation of 21 U.S.C. § 842(a)(5) by "not properly (annotating) one (1) DEA-222 Order Form for Schedule II Controlled Substances by failing to indicate the date received and quantity received" as required by Title 21 C.F.R. Section 1305.13(e) and Title 21, U.S.C. Section 827(a)(3), in violation of Title 21, U.S.C. Section 842(a)(5).

Title 21, C.F.R. Section 1305.13(e) provides:

\*\*\*\*(e)  the purchaser must record on Copy 3 of the DEA Form 222 the number of commercial or bulk containers furnished on each item and the dates on which the containers are received by the purchaser.  \*\*\*\*

Title 21, U.S.C. Section 827(a)(3) provides:

(a)  Inventory
Except as provided in subsection (c) of this section - \*\*\* (3) on and after May 1, 1971, every *registrant* under this subchapter manufacturing, distributing, or dispensing a controlled substance or substances shall maintain, on a current basis, a complete and accurate record of each such substance manufactured, received, sold, delivered, or otherwise disposed of by him, except that this paragraph shall not require the maintenance of a perpetual inventory.

(Emphasis Added).

Paragraph 7.b. of the Complaint alleges that United Pharmacy was missing a total of two (2) DEA-222 Order Forms documenting the receipt of Schedule II Controlled Substances as required by Title 21, C.F.R. Section 1304.21(a) and Title 21, U.S.C. Section 827(a)(3), in violation of U.S.C. § 842(a)(5).

3

Title 21, C.F.R. Section 1304.21(a) provides:

> (a) Every *registrant* required to keep records pursuant to §
> 1304.03 shall maintain, on a current basis, a complete and accurate
> record of each substance manufactured, imported, received, sold,
> delivered, exported, or otherwise disposed of by him/her, and each
> inner liner, sealed inner liner, and unused and returned mail – back
> package, except that no *registrant* shall be required to maintain a
> perpetual inventory. ****

(Emphasis Added).

Title 21 C.F.R. 1304.03 provides, in pertinent part:

> (a) Every *registrant*, …. shall maintain the records and inventories
> and shall file the reports required by this part, except as exempted
> by this section. **** The intent of the Administration is to permit
> the *registrant* to keep one set of records which are adapted by the
> *registrant* to account for controlled substances used in any activity.
> **** All of these records may be maintained in one consolidated
> record system.                              ****

(Emphasis Added).

Paragraph 7.c. of the Complaint alleges that United Pharmacy failed to maintain two (2)

DEA-222 Order Forms for a period of two years as required by Title 21, C.F.R. Section

1305.17(c) and Title 21, U.S.C. Section 828(c)(2), in violation of Title 21, U.S.C. Section

842(a)(5).

Title 21 C.F.R. Section 1305.17(c) provides:

>                              ****
> (c)  DEA Forms 222 must be maintained separately from all other
> records of the *registrant*.  DEA Forms 222 are required to be kept
> available for inspection for a period of two years.
>                              ****

(Emphasis Added).

Title 21, U.S.C. § 828(c)(2) provides:

>                              ****
> (2) Every person who gives an order required under
> subsection (a) of this section shall, at or before the time of giving

such order, make or cause to made a duplicate thereof on a form to be issued by the Attorney General in blank in accordance with subsection (d) of this section and regulations prescribed by him pursuant to this section, and shall, if such order is accepted, preserve such duplicate for a period of two years and make it available for inspection and copying by the officers and employees mentioned in paragraph (1) of this subsection.

\*\*\*\*

Paragraph 7.d. of the Complaint alleges that based on ten (10) discrepancies found during the accountability audit of eleven (11) controlled substances, United Pharmacy did not have complete and accurate dispensing and receiving records for Schedules II – V controlled substances as required by Title 21, C.F.R. Section 1304.21(a) and Title 21, U.S.C. Section 827(a)(3), in violation of Title 21, U.S.C. Section 842(a)(5).

Finally, Paragraph 7.e. of the Complaint alleges that a total of one hundred and six (106) invoices for Schedules III – V controlled substances were not properly annotated as United Pharmacy failed to note the date that controlled substances were received as required by Title 21, C.F.R. 1304.21(d) and Title 21, U.S.C. Section 827(a)(3), in violation of 21, U.S.C. § 842(a)(5).

As a result of the allegations in Paragraph 7.a. – e., the government claims the "defendant" (Defendants are unsure which one) is liable to the government for penalties of not more than $10,000 for each of the alleged 121 violations.

## BASIS FOR MOTIONS

This motion should be granted for the following reasons:

1.    Defendant Dr. Ahmad was not the official registrant as that term is intended and applied under the express terms of Title 21, C.F.R. § 1305.13(e); Title 21 U.S.C. § 827(a)(3); Title 21, C.F.R. § 1304.21(a); Title 21, C.F.R. § 1305.17(c); Title 21 U.S.C. § 828(c)(2); Title 21, C.F.R. § 1304.21(a); and Title 21, C.F.R. § 1304.21(d); and

2.      Defendant Dr. Ahmad cannot be the *de facto* registrant because he did not dispense controlled drugs or direct the dispensing of such drugs as required by legal interpretations of 21 U.S.C. § 823; 21 U.S.C. § 842(a)(5) and 21 C.F.R. §§ 1300 *et seq.*

3.      21 U.S.C. § 842(a)(5) is unconstitutional on its face and as attempted to be applied in this case because it is vague and overly broad in scope – both as to Dr. Ahmad and UPC, Ltd.

## ARGUMENT AND APPLICABLE LAW

I.      Registrant

        As can be readily observed through a careful reading of the regulations, before Dr. Ahmad can be held responsible under the Act, he must have been the "registrant." At all times relevant to the allegations in this case, United Pharmacy was the Registrant. See, Exhibits 1 and 2. As a consequence, Dr. Ahmad cannot be held liable pursuant to 21 U.S.C. § 842(a)(5).

II.     Dispensing

        The undisputed facts are that Dr. Ahmad went before the Arkansas State Medical Board on August 7, 2009 to request permission to dispense legend drugs. See, Exhibit 3a-b8. Notwithstanding the fact that Dr. Ahmad set forth in explicit detail why he should be granted a permit, the Board denied his request. See, Exhibit 3-b9. By denying him permission to dispense legend drugs, Dr. Ahmad was legally unable to dispense legend drugs in the state of Arkansas without jeopardizing his license to practice medicine. See, Exhibit 3-b2.

        Due to the fact that his reasons for requesting a permit to dispense legend drugs were real and substantial, Dr. Ahmad decided it would help his patients to have a fully licensed pharmacy affiliated with UPC. UPC, Ltd. is a sub-chapter S corporation owned by Dr. Ahmad and his wife. (Exhibit 3, ¶ 3). The pharmacy was opened as a separate corporate division. (Exhibit 3, ¶ 3). The pharmacy had nothing to do with the medical care of patients. (Exhibit 3 ¶ 4). It only

provided pharmacy services. (Exhibit 3, ¶ 4). The pharmacy had its own separate software, paperwork, phone, fax, email, and website. (Exhibit 3, ¶ 4). The pharmacy also had its own staff which had no overlap in responsibilities between the medical and pharmacy divisions. (Exhibit 3, ¶ 4).

When the pharmacy opened in 2010, it was called United Pharmacy and the pharmacy was managed exclusively by a pharmacist. (Exhibit 3, ¶ 4). In the beginning, the Pharmacist-In-Charge was an independent contractor. (Exhibit 3, ¶ 5). United Pharmacy's application for a permit to operate as an Arkansas pharmacy was received by the Pharmacy Board on January 27, 2010. (Exhibit 3, ¶ 5 and Exhibit 4). The person with whom the Pharmacy Board was to communicate regarding the application was Carla M. Garrison, a licensed pharmacist. (Exhibit 4). The owner/representative was Dr. Ahmad, but the "Pharmacist- In- Charge" was Carla M. Garrison. (Exhibit 4). On April 27, 2010, retail pharmacy license permit number 047719 was issued to Carla M. Garrison. (Exhibit 5).

On October 12, 2011, Carla M. Garrison was replaced by Pamela Hastings West (P.D. 11636). (Exhibit 3, ¶ 6). Retail pharmacy license permit number AR20627 was issued on November 8, 2011 and the Pharmacist- In-Charge was Pamela Hastings West. (Exhibit 6). Pamela Hastings West resigned on May 15, 2012. (Exhibit 3, ¶ 6). Thereafter, the pharmacy was closed until on or about July 2, 2012. (Exhibit 3, ¶ 6)

On July 3, 2012, the Pharmacy Board received a Change of Pharmacist in Charge Form stating that Albert Rinchuso (P.D. 07293) would be the new Pharmacist-In-Charge in place of Pamela Hastings West. (Exhibit 7).

Before Dr. Ahmad went in front of the Pharmacy Board, his attorney filed an application for the fictitious name of United Pharmacy for UPC, Ltd. This was done on October 10, 2012.

(Exhibit 8).  Furthermore, when Dr. Ahmad went before the Pharmacy Board to get his license, the Board specifically told him not to enter the pharmacy without the pharmacist being present. Dr. Ahmad didn't even have a key to the pharmacy.  (Exhibit 3, ¶ 7).

In January of 2013, United Pharmacy sued Cardinal Health for wrongfully cutting off the supply of controlled substances to United Pharmacy.  (Exhibit 3, ¶ 8).  As a product of that suit, Albert Rinchuso, the current Pharmacist-In-Charge, filed an affidavit wherein he stated the following:

> C)      In addition to these pain clinic policies and procedures, I have an independent and corresponding duty under Federal and State law to protect the diversion of controlled substances from United Pharmacy.  In this regard, the following policies and procedures are used by the pharmacy to guard against theft and diversion of controlled substances:
> - ➢ An alarm system in case of break-ins;
> - ➢ Multiple security cameras;
> - ➢ Only the Pharmacist-In-Charge has keys to the pharmacy;
> - ➢ Only the Pharmacist-In-Charge orders controlled substances;
> - ➢ Only the Pharmacist-In-Charge checks said deliveries of controlled substances and this is done immediately to insure accuracy;
> - ➢ Only the Pharmacist-In-Charge dispenses controlled substances;
> - ➢ All controlled substances are stored in the pharmacy in accordance with DEA security requirements (21 C.F.R § 1301.75);
> - ➢ Large quantities of controlled substances are stored in a securely locked, substantially constructed separate safe;
> - ➢ The Pharmacist-In-Charge keeps inventories of controlled substances as required by *21 C.F.R. § 1304.11* (emphasis added);
> - ➢ The dispensing Pharmacist-In-Charge has the duty to maintain a constant diligence against forged or altered prescriptions.  The law holds a pharmacist (sic) has a corresponding responsibility for ensuring that a prescription for controlled substances is written for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice (21 C.F.R.

8

§ 1306.04(a)) (Compliance with this requirement is simplified by the working relationship established between the pharmacy and the pain clinic);

➢ The Pharmacist-In-Charge is familiar with the U.S. Department of Justice Drug Enforcement Administration website and its Pharmacist's Guides for Controlled Substances (found at http://www.deadiversion.usdoj.gov/pubs/manuals/pharm2/index.html) and the Pharmacist's Guide to Prescription Fraud (http://www.deadiversion.usdoj.gov/pubs/brochures/pharmguide.htm)....

(Exhibit 3, ¶ 8; Exhibit 9).

In July of 2013, Albert Rinchuso, registered a new entity named United Pharmacy with a new Tax I.D. and employed himself under United Pharmacy.  The Articles of Incorporation of United Pharmacy, Ltd. (owned by Mr. Rinchuso) were filed on June 17, 2013.  (Exhibit 10).

As a consequence of the above, the undisputed facts are that the pharmacists-in-charge (during the period alleged in the Complaint as the range of dates during which violations occurred, *i.e.*, January 27, 2012 – May 30, 2013) were Pamela Hastings West and Albert Rinchuso.  (Exhibits 6 and 7).

The language of 21 U.S.C. § 842(a)(5) states that the section is applicable to "any person" who refuses or negligently fails to make, keep, or furnish any record, report, notification, declaration," and so forth.  First, this section is not applicable to UPC because it is not a "person" as that term is contemplated under the Act.  Next, Dr. Ahmad maintains that he should not be liable for the record keeping penalties because he was not the "registrant" as that term is contemplated under the regulations

In the case law where the issue of *de facto* registrants has been addressed, the owners of the pharmacies (who were not official registrants) essentially operated the facilities on a daily basis and were therefore held liable.  See, for example, *United States v. Robinson*, 2012 WL

3984786 (S.D. Fla. 2012); *United States v. Stidham*, 938 F.Supp. 808 (S.D. Ala. 1996); and

*United States v. Poulin*, 926 F.Supp. 246 (D. Mass. 1996).   Specifically, *U.S. v. Robinson, supra,*

emphasizes this reasoning when the court observes that the defendant "...owned the Center and

handled controlled substances and she had the authority and responsibility for maintaining the

Center's controlled substance records." Id, p. 6, citing *Stidman* and *Poulin, supra.*

Responsibility over the controlled substances is the key.  Of course, the undisputed

evidence is that Dr. Ahmad did not handle the controlled substances and was not responsible for

maintaining the controlled substance records.  (Exhibits 3,4, 5, 6, 7, and 8). This was the

responsibility of Pamela Hastings West and Albert Rinchuso.

In addition, *U.S. v. Robinson* states that "where corporate officers have been in a position

to prevent or correct the violations at issue, courts have found that there is individual liability

under the subsection which plainly applies to all 'persons.'"  *Id*, p. 6, citing *Stidman* and *Poulin,*

*supra.*  The undisputed evidence is that Dr. Ahmad was not in a position to prevent or correct

any alleged records violations because he was legally prohibited from dispensing controlled

substances, barred from the pharmacy without the pharmacist-in-charge being present, and had

no knowledge of the violations at the time they occurred or of the record keeping requirements.

(Exhibit 3, ¶ 2 and 10).

Furthermore, *United States v. Poulin* speaks to another critical issue for Dr. Ahmad's

potential liability in this case.  *Poulin* states that the Act (21 U.S.C. § 801, *et. seq.*) imposes strict

liability for record keeping violations.  926 F.Supp. 248.  However, *Poulin* also states that the

"provisions of the Act apply to all persons who *dispense* drugs, even if they have not registered

as required under the Act." 926 F. Supp. 248. (Emphasis added). *United States v. Poulin* cites

*U.S. v. Clinical Leasing Service*, 759 F.Supp. 310 (E.D. LA 1990) and *U. S. v. Green Drugs*, 905

F.2d 694 (3rd Cir. 1990) for the *dispensing* requirement.  Both *Leasing* (the clinic is a dispenser of controlled substances) and *Green* (pharmacy and owner/manager) support that proposition.

Of course, Dr. Ahmad was not doing any dispensing and he was certainly not managing. He was prohibited from dispensing under A.C.A. § 17-95-102(d) unless he had a dispensing permit approved by the Arkansas State Medical Board and he had been barred from the pharmacy by the Arkansas Pharmacy Board without the pharmacist being present.  (Exhibit 3 ¶ 2 & 7).

Finally, in addition to the issue of holding a person liable under the Act who did not manage, dispense or have any duties and responsibilities for the dispensing of controlled substances and the preparation of records, no case has addressed the issue of whether a parent corporation can be held liable under 21 U.S.C. 842(a)(5) for the failures of its separate division where the parent had no involvement in the management and day-to-day operations of the division.

21 C.F.R. § 1301.02(j) defines "person" as "any individual, corporation, government or governmental subdivision or agency, business trust, partnership, association, or other legal entity."  However, every regulation cited in the Complaint in this case speaks to the "registrant" failing to perform some required records action.  The obvious intent was to insure that companies, governments or legal entities who have a duty and responsibility to maintain and keep DEA records cannot escape liability because they are not individuals.  To conclude otherwise would mean that any person could be held liable within the entity – such as secretaries, janitors or maintenance men – and any company working for the corporation – such as the window washing company, the lawn maintenance company or its insurance company – could

face stiff penalties. The reach of the laws and regulations simply cannot extend that far if § 842(a)(2) is to be interpreted literally.

During the entire time that the government alleges that record keeping violations occurred, there were two pharmacists-in-charge managing and operating United Pharmacy and dispensing all controlled substances. Dr. Ahmad submits that under the statutes and case law, he cannot be legally held liable for records violations unless he dispensed controlled medications, directed others to dispense controlled medications, or actively managed the pharmacy. In addition, UPC cannot be held legally liable because the statutes and regulations do not reach non-managing parent corporations. To hold otherwise would expand the applicable statutes' and regulations' reach beyond their lawful scope.

III.    Constitutionality

If this Court, under the undisputed facts in this case, holds that the regulations and statues' reach (1) a mere owner who did not manage the pharmacy, dispense controlled drugs, or direct the pharmacies day to day activities and (2) a non-managing parent corporation, then the Act, specifically 21 U.S.C. § 842(a)(5), is unconstitutionally vague and overly broad in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

Under the facts of this case, 21 U.S.C. § 842(a)(5) is unconstitutional because (1) it encourages arbitrary enforcement and exposes the threat of substantial penalties on too many people in too many areas of pharmaceutical ownership and operation, (2) it burdens everyone rather than just those **persons** having a legal duty and responsibility to keep records pursuant to the provisions of the applicable regulations (the registrants) and who actually manage and dispense controlled substances; and (3) as applied in this case, it violates the fair warning requirements of the due process clause.

> [T]he alleged vagueness of a criminal statute must be judged in
> light of the conduct that is charges to be violative of the statute.
> See, *e.g.*, *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct.
> 710, 714, 42 L.Ed.2d 706 (1975); *United States v. Powell*, 423
> U.S. 87, 92-93, 96 S.Ct. 316, 319-320, 46 L.Ed.2d 228 (1975).

*Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

A statute can be impermissibly vague for either of two independent reasons. First, it fails

to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

prohibits. *United States v. Orchard*, 332 F.3d 1133, 1137-38 (8th Cir. 2003), quoting *Kolender v.*

*Lawson*, supra, at 357. Second, it authorizes or even encourages arbitrary and discriminatory

enforcement. *City of Chicago v. Morales*, 527 U.S. 41, 56-57, 119 S.Ct. 1849, 144 L.Ed. 2d 67

(1999). Furthermore, "[v]ague laws may trap the innocent by not providing fair warning" and "if

arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards

for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33

L.Ed. 2d 222 (1972).

A litigant may also bring a facial challenge to invalidate an imprecise law under each of

those doctrines. *City of Chicago v. Morales*, *supra* and *United States v. Williams*, 553 U.S. 285,

304, 128 S.Ct. 1830, 170 L.Ed. 2d 650 (2008).

> General principles of statutory construction provide that we look to
> the structure of the statute and the language surrounding the term
> to ascertain its meaning. *United States v. Kowal*, 527 F.3d 741,
> 746 (8th Cir.), *cert. denied*, 555 U.S. 1038, 129 S.Ct. 612, 172
> L.Ed.2d 468 (2008).
>
> A vagueness challenge to [a] statute which does 'not involve First
> Amendment freedoms must be examined in the light of the facts of
> the case at hand.' *Orchard*, 332 F.3d at 1138, quoting *United*,
> *807 States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42
> L.Ed.2d 706 (1975).

*United States v. Barraza*, 576 F.3d 798 (2009).

> In reviewing a vagueness challenge, the court considers whether
> "ordinary people, exercising ordinary common sense, can
> understand [a statutory prohibition] and avoid conduct which is
> prohibited, without encouragement of arbitrary and discriminatory
> enforcement." *United States v. Salisbury*, 983 F.2d 1369, 1378
> (6th Cir. 1993). Second, the court must evaluate whether the
> statute provides sufficiently "explicit standards for those who
> apply them" or whether, due to a statute's vagueness, it
> "impermissibly delegates basic policy matters to policemen,
> judges, and juries for resolution on an ad hoc and subjective basis."
> *Grayned*, 408 U.S. at 108-09, 92 S.Ct. 2294.

*Doe v. Snyder*, F.Supp.3d (2015)

Based on the fact that the scope of 21 U.S.C. § 842(a)(5) is defined as "any person," it is

Dr. Ahmad's position that on its face and as applied to him, and UPC, it is unconstitutionally

vague because it provides no objective standard to link their conduct (as a mere pain

management physician/part owner of a parent corporation that owned a pharmacy as a separate

division) and the law's requirements for the preparation and retention of records. A perfect

example of the kind of ambiguity found in "any person" under § 824(a)(5), is *Green v. Bock

Laundry Mach. Co.,* 490 U.S. 504, 109 S. Ct. 1981, 104 L.Ed. 2d 557 (1989). In *Green,* the

Supreme Court explored the ambiguity in the word "defendant" as used in a former version of

Federal Rule of Evidence 609(a)(1) holding the rule unconstitutional.

In addition, due to the fact that the provisions of the regulations cited in the

government's Complaint all refer to the "registrant," extending the scope of the statute to a mere

partial owner of a parent corporation, who had no responsibilities or legal duties regarding the

ordering or dispensing of controlled substances, makes the statute void for vagueness. Under the

circumstances, there was no way for the Defendant's to be on notice that the pharmacists'

transgressions (assuming they in fact occurred while they were legally responsible for the

management and day to day activities of the pharmacy) would somehow be imputed to them for the purpose of imposing substantial civil penalties.

Finally, § 824(a)(5) furnishes the government with a convenient tool for "harsh and discriminatory enforcement" by government prosecutors against a group of people with no duties and responsibilities for keeping or preserving DEA records, *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S. Ct. 839, 31 L.Ed. 2d 110 (1972) (quoting *Thornhill v. Alabama,* 310 U.S. 88, 97-98, 60 S.Ct. 736, 741-742, 84 L.Ed. 1093 (1940)), and confers on prosecutors and law enforcement officers a virtually unrestrained power to site and prosecute persons with substantial civil penalties. *Lewis v. City of New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed 2d 214 (1974). Concern for record keeping should not justify legislation that would otherwise fail to meet constitutional standards.

For the foregoing reasons, Defendants pray that their motion be granted and for any and all other proper relief to which he may be entitled.

Respectfully submitted,

TIMOTHY O. DUDLEY
114 S. Pulaski Street
Little Rock, AR 72201
Tel:   (501) 372-0080
Fax:   (501) 372-2999
AR Bar No: 82055
todudley@swbell.net


and

SAMUEL A. PERRONI
424 West 4th Street, Suite A
North Little Rock, AR 72114
Tel:    (501) 374-2818
Fax:    (501) 353-0517
AR Bar No: 74119
sperroni.perronilaw@gmail.com


## CERTIFICATE OF SERVICE

I, Samuel A. Perroni, do hereby certify that a true and correct copy of the above and

foregoing Motion has been sent to the following via electronic mail on this 1st day of October,

2015:

    Shannon Smith, AUSA
    P.O. Box 1229
    Little Rock, AR  72203

SAMUEL A. PERRONI

**EXHIBIT**

**1**

UNITED PHARMACY
7481 WARDEN ROAD
SHERWOOD, AR  72120-0000-000

| DEA REGISTRATION NUMBER | THIS REGISTRATION EXPIRES | FEE PAID |
|---|---|---|
| FU2008313 | 05-31-2016 | $731 |

| SCHEDULES | BUSINESS ACTIVITY | ISSUE DATE |
|---|---|---|
| 2,2N, 3,3N,4,5, | RETAIL PHARMACY | 04-04-2013 |

UNITED PHARMACY
7481 WARDEN ROAD
SHERWOOD, AR  72120-0000

**CONTROLLED SUBSTANCE REGISTRATION CERTIFICATE**
UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
WASHINGTON D.C. 20537

Sections 304 and 1008 (21 USC 824 and 958) of the Controlled Substances Act of 1970, as amended, provide that the Attorney General may revoke or suspend a registration to manufacture, distribute, dispense, import or export a controlled substance.

**THIS CERTIFICATE IS NOT TRANSFERABLE ON CHANGE OF OWNERSHIP, CONTROL, LOCATION, OR BUSINESS ACTIVITY, AND IT IS NOT VALID AFTER THE EXPIRATION DATE.**

---

**CONTROLLED SUBSTANCE REGISTRATION CERTIFICATE**
UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
WASHINGTON D.C. 20537

| DEA REGISTRATION NUMBER | THIS REGISTRATION EXPIRES | FEE PAID |
|---|---|---|
| FU2008313 | 05-31-2016 | $731 |

| SCHEDULES | BUSINESS ACTIVITY | ISSUE DATE |
|---|---|---|
| 2,2N, 3,3N,4,5, | RETAIL PHARMACY | 04-04-2013 |

UNITED PHARMACY
7481 WARDEN ROAD
SHERWOOD, AR  72120-0000

Sections 304 and 1008 (21 USC 824 and 958) of the Controlled Substances Act of 1970, as amended, provide that the Attorney General may revoke or suspend a registration to manufacture, distribute, dispense, import or export a controlled substance.

Form DEA-223 (4/07)

**THIS CERTIFICATE IS NOT TRANSFERABLE ON CHANGE OF OWNERSHIP, CONTROL, LOCATION, OR BUSINESS ACTIVITY, AND IT IS NOT VALID AFTER THE EXPIRATION DATE.**

UnitedPainCare000147

See Reverse of PURCHASER'S
Copy for Instructions

No order form may be issued for Schedule I and II substances unless a
completed application form has been received, (2) CFR 1305.04)

OMB APPROVAL
No. 1 117-0010

| TO: (Name of Supplier) | | | STREET ADDRESS | | | | TO BE FILLED IN BY PURCHASER |
|---|---|---|---|---|---|---|---|

CEDARDALE DISTRIBUTORS LLC DBA GEN-SOURCE

CITY and STATE: CARLSTADT, NJ 07072

STREET ADDRESS: 620 GOTHAM PARKWAY

| No. of Packages | Size of Package | Name of Item | NATIONAL DRUG CODE | No. of Packages Received | Date Received |
|---|---|---|---|---|---|
| 2 | 5 | FENTANYL 75 MCG/HR | | | |
| 1 | 5 | FENTANYL 100 MCG/HR | | | |
| 1 | 100 | HYDROMORPHONE 8mg | | | |
| 1 | 100 | HYDROMORPHONE 4mg | | | |

TO BE FILLED IN BY PURCHASER

DATE: 12/11/12

SIGNATURE OF PURCHASER
OR ATTORNEY OR AGENT

Name and Address of Registrant

UNITED PHARMACY
7481 WARDEN ROAD
SHERWOOD, AR 72120-0000-000

LAST LINE COMPLETED

No. of this Order Form: 126071600

(MUST BE 10 OR LESS)

DEA Registration No. FU9098313

Date Issued: 12/8/2012

Schedules: 1, 3, 3N, 4, 5,

Registered as a: RETAIL PHARMACY

DEA Form - 222
(AUGUST 2011)

U.S. OFFICIAL ORDER FORMS - SCHEDULES I & II
DRUG ENFORCEMENT ADMINISTRATION
PURCHASER'S Copy 3

---

- CARLSTADT, NJ 07072

FAX: 201.804.8885

Invoice Date: 12/18/12

Order: 536

Page: 1

Due Date 01/25/13

| Unit Price | SRP Price | Total Price |
|---|---|---|
| 9.98 | 9.98 | 199.96 |
| | 2.50 | 145.00 |
| 8.99 | 8.99 | 49.99 |
| 9.69 | 9.69 | 9.69 |

| | | |
|---|---|---|
| Subtotal: | | 403.64 |
| Promotional Allowance : | | 0.00 |
| Tax: | | 0.00 |
| Total: | | 403.64 |

EXHIBIT
2

UnitedPainCare000001

## AFFIDAVIT OF MAHMOOD AHMAD, M.D.

I, Mahmood Ahmad, M.D. hereby state on oath the following:

1.     I am a physician licensed to practice medicine in the states of Arkansas, Alaska, and Indiana. I obtained a pain medicine fellowship at Yale University and I am a diplomat of the American Board of Anesthesiology, sub-specialty certification in pain medicine. I am also a Fellow with the Australian and New Zealand College of Anesthetists.

2.     On August 7, 2009, I went before the Arkansas State Medical Board to request permission to dispense legend drugs pursuant to A.C.A. § 17-95-102(d). The reason for requesting permission was simple. I wanted to help my patients by having the ability to not only treat them but also to dispense their medications at point-of care. That way, I could explain the functions and risks of the medication and ensure that compliance and refills were handled in an appropriate manner. The Board denied my request. (See attached Exhibit "3b9"). From that point on, I was prohibited by Arkansas law from dispensing any type of legend drugs (including controlled substances) in my office or, for that matter, in any other office or setting. In other words, I was legally unable to dispense legend drugs in Arkansas without jeopardizing my license to practice medicine.

3.     Due to the fact that my reasons for requesting a permit to dispense legend drugs were real and substantial, I decided to have a fully licensed pharmacy adjacent to my pain clinic, *i.e.*, United Pain Care. We formed United Pain Care, Ltd., a Sub-Chapter S Corporation, which was owned by myself and my wife (50/50) to operate my pain clinic. However, my wife had no knowledge or experience with the day to day operations of the corporation. The pharmacy operated as a separate corporate division of United Pain Care, Ltd.

4.     The pharmacy had nothing to do with the medical care of patients. Its sole purpose was to provide pharmacy services. United Pain Care, Ltd. had its own separate

1

EXHIBIT

3

software, paperwork, phone, fax, e-mail and website. United Pain Care, Ltd. also had its own staff which had no overlap in responsibilities with the medical clinic.

5.      United Pain Care, Ltd. was managed exclusively by a pharmacist. In the beginning, the pharmacist was an independent contractor. When we went before the Pharmacy Board on January 27, 2010, we submitted an application that stated that the applicant was Carla Garrison, a licensed pharmacist and that listed me as the pharmacy owner. However, the "Pharmacist in Charge" was clearly stated to be Carla M. Garrison. On April 27, 2010, the Pharmacy Board issued Retail Pharmacy License Permit No. 047719 to Ms. Garrison. (See attached Exhibit "B").

6.      On October 12, 2011, Ms. Garrison was replaced by Ms. Pamela Hastings West as the pharmacist-in-charge. Thereafter, Retail Pharmacy License Permit No. AR2627 was issued on November 8, 2011 which reflected that Ms. West, was the pharmacist-in-charge. Ms. West resigned on May 15, 2012 and the pharmacy remained closed until on or about July 2, 2012. (See attached Exhibit "C"). On July 3. 2012, the Pharmacy Board was sent a change of pharmacist in charge form stating that Albert Rinchuso would be the new pharmacist-in-charge in place of Pamela Hastings West. Before we went before the Pharmacy Board in connection with the change of pharmacist-in-charge, we filed an application for the fictitious name of United Pharmacy for United Pain Care, Ltd. This was done on October 10, 2012. (See attached Exhibit "D").

7.      When I went before the Pharmacy Board to apply for a retail pharmacy license permit, the Pharmacy Board specifically told me not to enter the pharmacy without the pharmacist being present. I fully complied with that directive.

8.      In January of 2013, United Pharmacy sued Cardinal Health for wrongfully cutting off the supply of controlled substances to United Pharmacy. As a product of the suit, Albert Rinchuso signed an affidavit.

9.      In July of 2013, I sold United Pharmacy to Albert Rinchuso.  Mr. Rinchuso closed the pharmacy on his own in May of 2014 and took off without paying me anything for the pharmacy he had purchased.

10.     While United Pharmacy was a division of United Pain Care, Ltd., and before the pharmacy was sold to Mr. Rinchuso, I did not dispense a single legend drug or cause any of my medical clinic staff to dispense legend drugs.  All of the drugs were dispensed by the pharmacist-in-charge.  Furthermore, I did not operate the pharmacy.  I was busy caring for my medical clinic patients.  Again, I ordered no controlled substances; I handled no controlled substances; I did not verify, count, reconcile, return or destroy any medications, including controlled substances. I had no authority or responsibility for maintaining the pharmacy's controlled substance records. Finally, the DEA Registration (No. FU2008313) was in the name of United Pharmacy during the entire time we owned the company. (See attached Exhibit "1").  Assuming for the purpose of this affidavit that there were indeed record keeping violations, I was in no position to prevent or correct the violations because I had no knowledge of their existence or of the record keeping requirements.  That was always the responsibility of the Pharmacist-in-Charge.

Further the affiant sayeth not.

_____

MAHMOOD AHMAD, M.D.

STATE OF ARKANSAS      )
                                   )    ss
COUNTY OF PULASKI      )

Subscribed and sworn to, before me, a Notary Public, this ___1st___ day of October, 2015.

_____
NOTARY PUBLIC

My Commission Expires: ___2-6-2019___

4

Date: August 7, 2009   9:40 a. m.

APPEARANCE:      Mahmood Ahmad, M. D.

COMMENTS:        Physician Requested Appearance

**This physician requested appearance before the Board to discuss his request for a dispensing permit.**

EXHIBIT

3a

# Application For Permit To Dispense Drugs
## Arkansas State Medical Board
2100 Riverfront Drive Little Rock, AR   72202   501-296-1802   501-296-1805 Fax
www.armedicalboard.org

**Name** MAHMOOD AHMAD, MD

**License Number** E1687

**Drugs you wish to dispense:**
**Legend:** SEE ATTACHED LIST

**Controlled Substances:** SEE ATTACHED LIST

**Reasons why you wish to dispense drugs:** SEE ATTACHED EXPLANATION

**Location of nearest two (2) drug stores:** NORTH HILLS BLVD & MCCAIN, North Little Rock

**Approximate miles from your office:** 3 miles

This is to certify that I have read Act 515 and agree to personally fill, label, and dispense all drugs dispensed by me, and that I am subject to routine inspections at all times by an inspector or representative of the Arkansas State Medical Board.

**Note: Sample drugs are not included under Act 515.**

**Affidavit of Applicant**

**State of** ARKANSAS

**County of** PULASKI } ss.

MAHMOOD AHMAD , M.D. of PAIN MEDICINE (ANESTHESIOLOGY)
being duly sworn says that he is the person referred to in the above application for a permit to dispense drugs in the State of Arkansas; and that each of the statements herein contained is true in every respect.

MAHMOOD AHMAD, MD                    Mahmood Ahmad, MD
<u>Legibly Print or Type Name of Applicant</u>        <u>Signature of applicant (physician)</u>

Sworn to before me, this 21 day of May , 20 09

My commission expires 8 - 24 , 20 16

*SHERRIE RICE*
*COMMISSION NO. 12360336*
*ARKANSAS*
*SALINE COUNTY*
*EXPIRES 8-24-2016*
*NOTARIAL SEAL*

Arkansas State Medical Board   Dispensing Application With Rules and Regulations.
Rev. 6/02 IJM

**EXHIBIT**
**3b1**

Notary Signature

## REGULATION NO. 12

1.  Pursuant to other provisions of Act 515 of 1983 any physician licensed to practice medicine in the state of Arkansas who is a "dispensing physician" as defined by Act 515 of 1983 shall comply with all provisions of the Act and shall register with the Arkansas State Medical Board on a form provided by it for that purpose.

2.  Any physician desiring to dispense legend drugs, who is not exempt by the terms of Act 515 of 1983 from the requirement of prior approval of the Arkansas State Medical Board shall apply to the Board on a form provided for it for that purpose and shall be required to demonstrate the need for such dispensing of legend drugs prior to receiving approval.

3.  All records maintained by a dispensing physician pursuant to the requirements of Act 515 of 1983 shall be subject to inspection by a designated inspector of the Arkansas State Medical Board and at its direction during all regular business hours.

4.  Violation of the provision of Act 515 of 1983 or violations of these regulations shall constitute "unprofessional conduct" and shall subject the violator to disciplinary action as provided by Ark. Code Ann. 17-93-409.

History: Adopted June 16, 1983

## 17-95-102.  Legend drugs.

(a) A dispensing physician is a physician licensed under the Arkansas Medical Practices Act, Sec. 17-95-201 et seq., who purchases legend drugs to be dispensed to his or her patients for the patients' personal use and administration outside the physician's office.

(b) This section shall not apply to physicians who only dispense drugs in injectable form unless they are controlled substances, in which case the section shall fully apply.

(c) The dispensing physician shall:
  (1) Personally dispense legend drugs and the dispensing of such drugs may not be delegated;
  (2) Keep records of all receipts and distributions of legend drugs.  The records shall be subject to inspection by the proper enforcement authority and shall be readily accessible for inspection and maintained in a central registry;
  (3) Label legend drugs with the following information: patient's name and address; prescribing physician's address and narcotic registry number issued by the Drug Enforcement Administration of the United States Department of Justice; date of dispensing; directions and cautionary statements, if any, as required by law.

(d) No physician licensed under the Arkansas Medical Practices Act, Sec. 17-95-201 et seq., shall dispense legend drugs without prior approval by the Arkansas State Medical Board after application to the board and on the showing of need.  Licensed physicians who were dispensing in the ordinary course of their practice for the twelve (12) months immediately prior to July 4, 1983, shall be exempt from the requirements of this subsection.

(a) The Arkansas State Medical Board shall enforce the provisions of this section and is authorized and directed to adopt regulations to carry out its purpose.

History. Acts 1983, No. 515, §§ 1-4; A.S. A. 1947, §§ 72-638 – 72-641; Acts 1987, No. 190, § 1.

EXHIBIT

3b2

## 17-95-409.  Denial, suspension, or revocation - Grounds.

(a) (1)  The board may revoke an existing license, impose penalties as listed in § 17-95-410, or refuse to issue a license in the event the holder or applicant, as the case may be, has committed any of the acts or offenses defined in this section to be unprofessional conduct.

(2)  The words "unprofessional conduct", as used in Sub-chapters 2-4 of this chapter, are declared to mean:

(A) (i)  Conviction of any crime involving moral turpitude or conviction of a felony.

(ii)  The judgment of any such conviction, unless pending upon appeal, shall be conclusive evidence of unprofessional conduct;

(B)  Resorting to fraud, misrepresentation, or deception in applying for or securing a license to practice medicine or in taking the examination for the license, or in seeking a renewal of a license;

(C)  Aiding or abetting an unlicensed person to practice medicine;

(D)  Procuring or aiding or abetting in procuring a wrongful and criminal abortion;

(E)  Violation of the laws of the United States or the State of Arkansas regulating the possession, distribution, or use of narcotic or controlled drugs classed in schedules 1-5 of the Controlled Substances Act of 1970 or the Uniform Controlled Substances Act, Sec. 5-64-101 et seq., including any amendments thereto;

(F)  Habitual indulgence in the use of alcohol to such an extent as to render himself incapable of exercising that degree of skill and judgment in the treatment of his patients which the moral trust and confidence in him demands;

(G)  Grossly negligent or ignorant malpractice;

(H)  Habitual, intemperate, or excessive use of narcotics or of any other habit-forming drugs;

(I)  Representing to a patient that a manifestly incurable condition of sickness, disease, or injury can be permanently cured;

(J)  Becoming physically or mentally incompetent to practice medicine to such an extent as to endanger the public;

(K)  Insanity or mental disease, if evidenced by an adjudication or by voluntary commitment to an institution for treatment of a mental disease or as determined by an examination conducted by three (3) impartial psychiatrists retained by the board;

(L) (i)  Soliciting for patronage;

(ii)  Advertising for patronage in a false, fraudulent, deceptive, or misleading manner;

(iii)  Advertising the quality of medical services; or

(iv)  Advertising illegal procedures and practices;

(M) Offering, undertaking, attempting, or agreeing to cure or treat disease by a secret method, procedure, treatment, or medicine or representing, directly or indirectly, that he can treat, operate on, or prescribe for any human condition by a method, means, or procedure which he refuses to divulge upon demand to the Arkansas State Medical Board;

(N)  The willful betraying of a professional secret; and

(O)  Persistent, flagrant over-charging or over-treating of patients;

(P)  Violating a regulation of the board; and

(Q)  Violating a term of probation or an order previously imposed by the board.

(b) (1) (A)  The board shall suspend an existing license in the event the holder breached a contract to practice medicine in a rural community that was entered into under the provisions of Sec. 6-81-701 et seq.

(B)  The suspension shall be for a period of years equivalent to the number of years that the recipient is obligated to practice medicine in a rural area, and the suspension shall continue until the loan, with interest thereon, is paid in full.

(2)  Upon notification from the Dean of the College of Medicine of the University of Arkansas for Medical Sciences and the Director of the Health Department that exigent circumstances warrant a waiver of the suspension, the board shall reinstate the holder's license.

History.  Acts 2001, No. 464, § 5

EXHIBIT

3b3

Patient:

RespPty:

Birth:

406 HIGHWAY 425
MONTICELLO          AR 71655
RPh: ROBINSON, HANNAH
NCPDP#: 0420391

Prescriptions:                                    Date: 01/01/2007 TO 01/16/2009

| LastFill | Rx # | Drug Name | Qty | Physician Name | T/P | Price |
|---|---|---|---|---|---|---|
| 01/18/07 | 6867766 | NEXIUM 40 MG | 30 | Dr.HILL | DHMC | 5.35 |
| 01/18/07 | 6868809 | CLOTRIM/BETA DIPROP | 45 | Dr.HILL | DHMC | 2.15 |
| 01/18/07 | 6871189 | LEXAPRO 10 MG | 30 | Dr.HILL | DHMC | 5.35 |
| 01/18/07 | 4476831 | HYDROCO/APAP 10-650 | 60 | Dr.HILL | DHMC | 2.15 |
| 02/07/07 | 4477485 | ALPRAZOLAM 2 MG | 90 | Dr.AHMAD | | 38.17 |
| 02/19/07 | 6875885 | CITALOPRAM 20 MG | 30 | Dr.HILL | CASH | 4.00 |
| 02/19/07 | 4477903 | HYDROCO/APAP 10-650 | 60 | Dr.HILL | CASH | 32.49 |
| 03/07/07 | 4477904 | ALPRAZOLAM 2 MG | 30 | Dr.HILL | CASH | 21.85 |
| 02/07/07 | 4477484 | CARISOPRODOL 350 MG | 60 | Dr.AHMAD | DHMC | 2.15 |
| 02/07/07 | 2212990 | MEPROZINE 50-25 MG | 90 | Dr.AHMAD | CASH | 32.96 |
| 02/07/07 | 2212989 | MORPHINE SUL 60 MG | 60 | Dr.AHMAD | DHMC | 2.15 |
| 03/13/07 | 6871189 | LEXAPRO 10 MG | 30 | Dr.HILL | DHMC | 5.35 |
| 03/15/07 | 6867766 | NEXIUM 40 MG | 30 | Dr.HILL | DHMC | 5.35 |
| 03/15/07 | 6875885 | CITALOPRAM 20 MG | 30 | Dr.HILL | CASH | 4.00 |
| 04/03/07 | 4479037 | CARISOPRODOL 350 MG | 60 | Dr.AHMAD | DHMC | 2.15 |
| 04/03/07 | 4479038 | ALPRAZOLAM 2 MG | 120 | Dr.AHMAD | DHMC | 21.91 |
| 04/03/07 | 2213104 | MEPROZINE 50-25 MG | 90 | Dr.AHMAD | DHMC | 31.38 |
| 04/03/07 | 2213284 | MORPHINE SUL 60 MG | 60 | Dr.AHMAD | DHMC | 2.15 |
| 04/16/07 | 4479412 | HYDROCO/APAP 10-650 | 60 | Dr.HILL | DHMC | 2.15 |
| 04/16/07 | 6882699 | CITALOPRAM 20 MG | 30 | Dr.HILL | DHMC | 2.15 |
| 04/16/07 | 6882700 | VALTREX 500 MG | 40 | Dr.HILL | DHMC | 5.35 |
| 05/03/07 | 4479413 | CARISOPRODOL 350 MG | 30 | Dr.HILL | DHMC | 2.15 |
| 05/03/07 | 4479414 | ALPRAZOLAM 2 MG | 60 | Dr.HILL | DHMC | 12.33 |
| 05/07/07 | 2213479 | MEPERIDINE 50 MG | 12 | Dr.AHMAD | DHMC | 2.15 |
| 05/17/07 | 6882699 | CITALOPRAM 20 MG | 30 | Dr.HILL | DHMC | 2.15 |
| 05/30/07 | 4480501 | CARISOPRODOL 350 MG | 60 | Dr.AHMAD | DHMC | 2.15 |
| 05/30/07 | 2213590 | OXYCODONE 40 MG CR | 90 | Dr.AHMAD | DHMC | 2.15 |
| 05/30/07 | 2213589 | MEPERIDINE/ PROMETH | 90 | Dr.AHMAD | DHMC | 54.97 |
| 05/30/07 | 4480502 | ALPRAZOLAM 2 MG | 120 | Dr.AHMAD | DHMC | 21.91 |
| 06/14/07 | 4480903 | HYDROCO/APAP 10-650 | 60 | Dr.HILL | DHMC | 2.15 |
| 06/14/07 | 4480904 | ALPRAZOLAM 2 MG | 60 | Dr.HILL | CASH | 25.74 |
| 06/14/07 | 6889111 | CITALOPRAM 20 MG | 30 | Dr.HILL | DHMC | 2.15 |
| 06/14/07 | 4480905 | CARISOPRODOL 350 MG | 30 | Dr.HILL | CASH | 15.89 |
| 08/31/07 | 6897285 | CITALOPRAM 40 MG | 30 | Dr.CONNELLEY | DHMC | 2.15 |
| 08/31/07 | 4483104 | ALPRAZOLAM 0.25 MG | 40 | Dr.CONNELLEY | CASH | 14.86 |
| 08/31/07 | 2214057 | MEPERIDINE/ PROMETH | 40 | Dr.CONNELLEY | CASH | 17.86 |
| 09/10/07 | 2214111 | OXYCOD/APAP 5-325 M | 10 | Dr.SIMPSON | DHMC | 2.15 |
| 09/10/07 | 6890312 | NEXIUM 20 MG | 30 | Dr.AHMAD | DHMC | 5.35 |
| 09/13/07 | 4483449 | HYDROCO/APAP 10-650 | 60 | Dr.HILL | DHMC | 2.15 |
| 09/13/07 | 6898695 | CARISOPRODOL 350 MG | 30 | Dr.HILL | DHMC | 2.15 |
| 09/13/07 | 4483448 | ALPRAZOLAM 2 MG | 60 | Dr.HILL | CASH | 25.74 |
| 10/02/07 | 6897285 | CITALOPRAM 40 MG | 30 | Dr.CONNELLEY | DHMC | 2.15 |
| 11/08/07 | 6897285 | CITALOPRAM 40 MG | 30 | Dr.CONNELLEY | DHMC | 2.15 |
| 12/05/07 | 6897285 | CITALOPRAM 40 MG | 30 | Dr.CONNELLEY | DHMC | 2.15 |
| 12/31/07 | 4486392 | ALPRAZOLAM 0.25 MG | 30 | Dr.CONNELLEY | DHMC | 4.44 |
| 12/31/07 | 4486394 | HYDROCO/APAP 7.5-65 | 30 | Dr.CONNELLEY | DHMC | 2.15 |
| 01/03/08 | 6897285 | CITALOPRAM 40 MG | 30 | Dr.CONNELLEY | DHMC | 2.25 |
| 01/26/08 | 6913239 | VALTREX 500 MG | 14 | Dr.HILL | DHMC | 5.60 |
| 01/26/08 | 6913240 | CITALOPRAM 20 MG | 30 | Dr.HILL | DHMC | 2.25 |
| 02/27/08 | 6913239 | VALTREX 500 MG | 14 | Dr.HILL | DHMC | 5.60 |
| 02/28/08 | 4488105 | CARISOPRODOL 350 MG | 90 | Dr.AHMAD | DHMC | 2.25 |

**EXHIBIT**

3b4

Patient:
RespPty:

Birth:

PHARMACY #3570
406 HIGHWAY 425
MONTICELLO      AR 71655
RPh: ROBINSON, HANNAH
NCPDP#: 0420391

Prescriptions:                                    Date: 01/01/2007 TO 01/16/2009

| LastFill | Rx # | Drug Name | Qty | Physician Name | T/P | Price |
|---|---|---|---|---|---|---|
| 02/28/08 | 4488106 | ALPRAZOLAM 2 MG | 120 | Dr.AHMAD | DHMC | 21.91 |
| 02/28/08 | 4488107 | HYDROCO/APAP 10-500 | 240 | Dr.AHMAD | DHMC | 2.25 |
| 02/28/08 | 4488108 | DIAZEPAM 5 MG | 90 | Dr.AHMAD | DHMC | 6.01 |
| 02/28/08 | 6917570 | CITALOPRAM 40 MG | 30 | Dr.AHMAD | DHMC | 2.25 |
| 03/31/08 | 4488874 | CARISOPRODOL 350 MG | 90 | Dr.AHMAD | DHMC | 2.25 |
| 03/31/08 | 4488875 | ALPRAZOLAM 2 MG | 120 | Dr.AHMAD | DHMC | 21.91 |
| 03/31/08 | 4488876 | HYDROCO/APAP 10-500 | 240 | Dr.AHMAD | DHMC | 2.25 |
| 03/31/08 | 4488877 | DIAZEPAM 10 MG | 90 | Dr.AHMAD | DHMC | 7.80 |
| 03/31/08 | 6920551 | CITALOPRAM 40 MG | 30 | Dr.AHMAD | DHMC | 2.25 |
| 04/28/08 | 2215221 | OXYCONTIN 40 MG CR | 90 | Dr.AHMAD | DHMC | 5.60 |
| 04/28/08 | 6923685 | CITALOPRAM 40 MG | 30 | Dr.AHMAD | DHMC | 2.25 |
| 05/22/08 | 6926158 | CITALOPRAM 20 MG | 90 | Dr.SHEIRON | DHMC | 2.25 |
| 05/22/08 | 6926159 | NEXIUM 40 MG | 30 | Dr.SHEIRON | DHMC | 5.60 |
| 05/22/08 | 6926160 | SMZ/TMP DS 800-160 | 14 | Dr.SHEIRON | DHMC | 2.25 |
| 05/29/08 | 6926699 | DIOVAN HCT 80/12.5 | 30 | Dr.SHEIRON | DHMC | 5.60 |
| 06/10/08 | 4490608 | PROPO-N/APAP 100-65 | 40 | Dr.CONNELLEY | DHMC | 2.25 |
| 06/10/08 | 6927827 | CYCLOBENZAPR 10 MG | 40 | Dr.CONNELLEY | DHMC | 2.25 |
| 06/10/08 | 6927828 | PIROXICAM 20 MG | 30 | Dr.CONNELLEY | DHMC | 2.25 |
| 06/10/08 | 4490610 | ZOLPIDEM 5 MG | 30 | Dr.CONNELLEY | DHMC | 2.25 |
| 06/30/08 | 4491066 | HYDROCO/APAP 5-500 | 40 | Dr.CONNELLEY | DHMC | 2.25 |
| 06/30/08 | 6929668 | TERAZOSIN 1 MG | 30 | Dr.CONNELLEY | DHMC | 2.25 |
| 06/30/08 | 6927830 | CITALOPRAM 20 MG | 90 | Dr.CONNELLEY | DHMC | 5.60 |
| 06/30/08 | 6927829 | DIOVAN HCT 80/12.5 | 30 | Dr.CONNELLEY | DHMC | 2.25 |
| 07/08/08 | 4490610 | ZOLPIDEM 5 MG | 30 | Dr.CONNELLEY | DHMC | 2.25 |
| 07/11/08 | 2215547 | OXYCO/APAP 10-650 | 60 | Dr.QURESHI | DHMC | 2.25 |
| 07/11/08 | 6930801 | PIROXICAM 20 MG | 30 | Dr.QURESHI | DHMC | 5.60 |
| 07/11/08 | 4491308 | LYRICA 75 MG | 60 | Dr.QURESHI | DHMC | 2.25 |
| 07/25/08 | 6932130 | LISINOPRIL 20 MG | 30 | Dr.CONNELLEY | DHMC | 5.60 |
| 07/30/08 | 6926159 | NEXIUM 40 MG | 30 | Dr.SHEIRON | DHMC | 2.25 |
| 07/30/08 | 6927830 | CITALOPRAM 20 MG | 90 | Dr.CONNELLEY | DHMC | 30.60 |
| 08/25/08 | 2215760 | OXYCO/APAP 10-650 | 40 | Dr.QURESHI | CASH | |

                                                                    $646.83

Report Date: 01/16/2009

Attested To By:  _Hannah Robinson_
                Registered Pharmacist

**EXHIBIT**

3b5

# Medication Dispensing Permit

## Mahmood Ahmad, MD

**UNITED PAIN CARE, INC**

May 21, 2009
Authored by: Mahmood Ahmad, MD

EXHIBIT

3 bb

# Medication Dispensing Permit

## Mahmood Ahmad, MD

## Background

- Residency in Anesthesiology, Yale University School of Medicine — 1997
- Fellowship in Pain Medicine, Yale University School of Medicine — 1998
- American Board of Anesthesiology Certifications in Anesthesiology and Pain Medicine — 1998
- Authored book chapters, published in peer-reviewed journals, presented in international and national scientific meetings and conferences (details in attached CV)
- Established United Pain Care with clinics in Sherwood, Conway and White Hall, Arkansas — 2005
- DEA permit for prescribing naltrexone for opioid detoxification — 2006
- Developed practice management solutions including electronic secure prescriptions (sample attached)

Over the last three years, many issues have been encountered related to prescription of controlled substances which necessitated the application for a physician dispensing permit. These issues are outlined below

## Forged Prescriptions

An incidence of a forged prescription has come to our notice. This "patient" was not on United Pain Care records. Luckily, the pharmacist called the office to verify the regimen and the quantities prescribed. While the pharmacist was on the phone, this "patient" disappeared from the pharmacy. The pharmacist faxed the forged prescription and it was a counterfeit prescription and signature.

The following steps have since been taken

- Electronic Medical Record with a scanned copy of the prescription
- Development of an electronic prescription program which generates an imprint of a logo and a border.
- Printing on a security featured thermal paper which is colored, requires a special printer and generates a watermark of "VOID" when copied

All the above steps are valid if the dispensing pharmacy is aware of our prescription features. However, if such "patients" are forging prescriptions with logical regimens and quantities, it is unlikely to trigger a phone call from the pharmacy to the prescribing physician. This scenario is likely to occur from smaller pharmacies. United Pain care treats patients from the remote parts of Arkansas as well as patients from neighboring states.

## Fake Phone Calls for Prescriptions

- Patients or someone on behalf of a patient have called in as follows "This is Dr Ahmad's" nurse Sherrie calling from United Pain Care, for a refill on Mr XYZ date of birth MM/DD/YYYY for Hydrocodone 10/325, two tablets every six hours quantity of 240 and Xanax 1mg three times a day quantity of 90. If you have any questions please call us at (501) 834 7246" and **it has worked!**

EXHIBIT

367

## Multiple Physicians Multiple Pharmacies

Unusual patients are successful in billing prescriptions from small pharmacies that do not have a network database. They pay cash for their medications and use different pharmacies for different doctors. For example, they will take Dr A's prescription to pharmacy A and Doctor B's prescription to pharmacy B. A report is attached.

## Insufficient Quantities

If a pharmacy has insufficient quantity of Schedule II drug on stock, they require the patient to make an extra visit to the clinic for filling the balance of the originally prescribed quantity. Pharmacies do not provide the remaining amount on the original prescription once any amount is dispensed. If patients wait for the pharmacy to order stock, this puts them at risk of pain, suffering and withdrawal symptoms. This usually occurs with certain branded medications e.g. OPANA, FENTORA or ACTIQ etc.

## Obtaining Medications from Suppliers

This has been made difficult by pharmacies. The patient is told that it will take 7 days to get the order shipped in. This leaves no choice to the patient to get the alternative generic equivalent offered by the pharmacist.

## Generic Substitution

This practice is widespread. There is significant profit incentive for pharmacists to provide generic substitutes. Patients are often told that their insurance does not cover the medication or they tell them the cash price of the branded drug. This is all done on a computer which is not visible to the patient. If the patient insists they want to get what the doctor prescribed, then they are told to get prior authorization from the insurance.

## Stranger Pickup

Mr X who is a school teacher had his medications picked up by a stranger. The pharmacy was called about it and they confirmed someone picked up the pain medications for Mr X. The pharmacy did not have any identification data on the stranger who picked up the medication. The pharmacy told us they just dispense the medication without proof of identity or signature.

## Pain Physician Dispensing in other States

Pain specialists in most other states have been dispensing medications from their clinics because of similar circumstances.  There are several benefits associated with Physician dispensing particularly with controlled substances

- Assures the practicing physician that the appropriate medications were dispensed
- Ensures medication was dispensed to the patient.
- Physicians can check pharmacy benefits in real time
- Patients valuable time and money associated with travel costs
- Improvement in patient compliance
- No early refill issues

2

EXHIBIT

3b8



2100 Riverfront Drive, Little Rock, Arkansas 72202 • (501) 296-1802 • FAX (501) 603-3555
www.armedicalboard.org

Peggy Pryor Cryer
Executive Secretary

**Board Members:**

Trent P. Pierce, M.D.
Chairman
West Memphis, AR

Joseph M. Beck, M.D.
Vice-Chairman
Little Rock, AR

Bob E. Cogburn, M.D.
Secretary
Mountain Home, AR

Mrs. Anne Britton
Treasurer
Fayetteville, AR

Omar T. Atiq, M.D.
Pine Bluff, AR

Harold B. Betton, M.D.
Little Rock, AR

Jim C. Citty, M.D.
Searcy, AR

William F. Dudding, M.D.
Fort Smith, AR

Roger Harmon, P.O.
Jonesboro, AR

John E. Hearnsberger, II, M.D.
Nashville, AR

Patty Pettway, D.O.
Booneville, AR

Sylvia D. Simon, M.D.
Monticello, AR

Douglas F. Smart, M.D.
Little Rock, AR

John B. Weiss, M.D.
Fayetteville, AR

**Legal Counsel:**

William H. Trice, III
211 Spring Street
Little Rock, AR 72201
(501) 372-4144

**August 15, 2006**

COPY

**Mahmood Ahmad, M. D.**
**7481 Warden Road**
**Sherwood, AR 72120**

**RE: Request to dispense medications**

**Dear Dr. Almad:**

**At the August 6-7, 2009 Board meeting you appeared before the Board to request a permit to dispense specific medications. After talking with you regarding this request, the Board unanimously voted to deny your request for a dispensing permit.**

**If you have any questions, please contact our office.**

**Sincerely,**

**Peggy Pryor Cryer**
**Executive Secretary**

**PPC/jff**

This agency does not discriminate on the basis of race, color, national origin, sex, religion, age or disability in employment or the provision of service

**EXHIBIT**

369



# Application for a Permit to Operate
## as an *Arkansas Pharmacy*

ARKANSAS STATE
BOARD OF PHARMACY

JAN 27 2010

104505   RECEIVED

| PART I: GENERAL INFORMATION | | |
|---|---|---|
| **1.** | *Business Name* | UNITED PAIN CARE LIM ITD |
| | *dba or name that will appear on your permit if different from Business Name above* | UNITED PAIN CARE |
| **2.** | *Physical Address* | |
| | *Street* | 7481 WARDEN ROAD |
| | *City* | SHERWOOD |
| | *State* | AR |
| | | *Zip* 72120 |
| | *Pharmacy Telephone Number* | 501-834-7246 |
| | | *Pharmacy Fax Number* 501-542 4295 |
| | *Website* | www-unitedpaincare.com |
| **3.** | *Mailing Address(Complete this section ONLY if different from the physical address above)* | |
| | *Street or PO Box* | |
| | *City* | |
| | *State* | |
| | | *Zip* |

| **4.** | *Type of Pharmacy (check all that apply)* | ___ Full line retail pharmacy<br>___ Nuclear<br>___ Chain<br>_X_ Independent<br><br>___ Compounding Pharmacy | ___ Internet pharmacy *<br>___ Specialty pharmacy*<br>___ Mail Order*<br>_X_ Clinic*<br>___ Other*<br><br>*(\*please describe your operation on separate sheet)* |
|---|---|---|---|

| **5.** | *Person with whom the Arkansas State Board of Pharmacy may communicate regarding this application:* | |
|---|---|---|
| | *Name* | Carla GARRISON |
| | *Telephone/Cell Phone* 501-612-3629 | *Email* Mullins.Carla@Yahoo.Com |

| **6.** | *Is this a change of Ownership?*<br>*If **Yes**, what is the name of the facility licensed by the Arkansas Board of Pharmacy?* _____<br>*What is the license number?* _____<br>*What is the closing date of the sale?* _____<br>*Who was the previous owner?* _____ | Yes [ ]   No [X] |
|---|---|---|
| **7.** | *Is the pharmacy located in a building owned by the pharmacy owners? If you answered **No** please attach a copy of the lease.* | Yes [X]   No [ ] |
| **8.** | *Will you provide controlled substances? If **Yes**, what is your Federal DEA Permit Number ?* ~~XXXXXXXXXX~~ PENDING<br>*What is the Registrants name?* UNITED PAIN CARE | Yes [X]   No [ ] |
| **9.** | *Please list the states in which the applicant is licensed or write "none" if the applicant is not licensed in any other state. You may attach another sheet if you need more space.*<br><br>"NONE" | |

FOR OFFICE USE ONLY

License # AP20627 Date Issued: 4/27/10   Fee Submitted: 450⁰⁰   Check No.1581   Permit sent Gave to
BEW 1-27-2010                                         Ron 4/27/10

**EXHIBIT**

**4**

| 10. | *Hours of Operation* | | |
|-----|-----------|----------------------------------------|-----------------|
| | | *Please express in terms of a.m. and p.m.* | *Total Hours/Day* |
| | *Sunday* | | |
| | *Monday* | 0800 am  to  0500 pm | 8 |
| | *Tuesday* | 0800 am  to  0500 pm | 8 |
| | *Wednesday* | 0800 am  to  0500 pm | 8 |
| | *Thursday* | 0800 am  to  0500 pm | 8 |
| | *Friday* | 0800 am  to  0500 pm | 8 |
| | *Saturday* | | |
| | | Total Hours per Week | 40 |

## PART II: APPLICANT HISTORY

Please answer each of the following questions by putting a check (√) in the appropriate box on the right. You must answer each question with a "Yes" or "No" response as no other response is acceptable. All "Yes" answers MUST be explained in detail in a separate SIGNED and NOTARIZED affidavit. The affidavit should include all relevant dates, and identify the relevant jurisdiction and/or entity involved. Failure to disclose any of the requested information may result in the denial of your application or other appropriate action. NOTE: If you answer "Yes" to any of the questions below and you have already submitted a detailed affidavit to the Arkansas State Board of Pharmacy explaining your response you need not submit another detailed affidavit. Please note the date of your previous submission next to the applicable question(s).

| 11. | *Is their any disciplinary action pending against the pharmacy(applicant) by any licensing jurisdiction, the USDA, Drug Enforcement Agency, or any state drug enforcement authority? If yes, please explain on a separate sheet.* | Yes [ ]  No [X] |
|-----|-----|-----|
| 12. | *Have any of the applicant owners, officers, directors, or stockholders ever been convicted of a felony or crime involving the practice of pharmacy? (If the business is a corporation, you need not include stockholders in this question unless they currently serve as officers or directors of the applicant business, or own more than twenty percent (20%) of the company stock.)* | Yes [ ]  No [X] |
| 13. | *Has any sanction or disciplinary action been taken regarding any license, permit or registration issued to the applicant, officers, directors, partners or stockholders involving the practice of pharmacy? (If the business is a corporation, you need not include stockholders in this question unless they currently serve as officers or directors of the applicant business, or own more than twenty percent (20%) of the company stock.)* | Yes [ ]  No [X] |
| 14. | *Are there any charges pending against the applicant, officers, directors, partners or stockholders involving the practice of pharmacy? (If the business is a corporation, you need not include stockholders in this question unless they currently serve as officers or directors of the applicant business, or own more than twenty percent (20%) of the company stock.)* | Yes [ ]  No [X] |
| 15. | *Has the applicant ever had any application for a license or permit refused or denied by any licensing authority? If yes, please explain on a separate sheet.* | Yes [ ]  No [X] |
| 16. | *Has the applicant ever been the subject of disciplinary action or been sanctioned by any licensing authority? If yes, please explain on a separate sheet.* | Yes [ ]  No [X] |
| 17. | *Has the applicant ever had a registration issued by a controlled substance authority revoked, suspended, surrendered, limited, or restricted? If yes, please explain on a separate sheet.* | Yes [ ]  No [X] |

Arkansas In-State Pharmacy Application: Page   2

**PART III: PERSONNEL**

18. *List all individuals filling prescriptions or performing any function considered to be the practice of pharmacy for this business. You may attach additional sheets if needed. YOU MUST NAME A PHARMACIST IN CHARGE.*

| Name | License # | Hours/Wk | Age | Degree | Hire Date |
|------|-----------|----------|-----|--------|-----------|
| Pharmacist in charge | | | | | |
| CARLA GARRISON | PD 09611 | 40 | 47 | PharmD | 1/26/2010 |
| Other pharmacists | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Interns | License # | Hours/Wk | Hire Date | |
|---------|-----------|----------|-----------|--|
| | | | | |
| | | | | |

| Pharmacy Technicians | Registration # | | Hire Date | |
|----------------------|----------------|--|-----------|--|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**PART IV: BUSINESS ORGANIZATION/OWNERSHIP**

19. What is your employer identification number?  20 - 2658088

Select the appropriate form of ownership from the choices below, then go to the next appropriate section.

___  Sole Proprietorship (Go to 19A)
_X_  Corporation  (Go to 19C)
___  General Partnership (Go to 19B)
___  Limited Partnership (Go to 19B)
___  LLC (Go to 19C)
___  LLP (Go to 19B)
___  Other (Please explain)

*19A. Please provide the name, and the address of the owner of this company:*

MAHMOOD AHMAD, MD
BUSINESS: 7481 WARDEN ROAD, SHERWOOD AR 72120.
HOME: 3117 OVERBROOK CIRCLE, NORTH LITTLE ROCK, AR 72116

*19B. Partnership Name, if different from Applicant name listed in Item 1, page 1.*

*In the space provided below, please provide the names, addresses and percentage ownership of all partners/members. You may attach a list of partners/members if there is not enough space.*

Go to Item 20.

*19C. Corporation Name, if different from Applicant name listed in Item 1, page 1.*

[X] Check if Subchapter S Corporation          State of Incorporation   ARKANSAS

Is this corporation publicly traded?                                                        Yes [ ]   No [X]
Is this corporation a wholly owned subsidiary of another company or corporation?   Yes [ ]   No [X]
   *If yes, what is the name of the parent company?*

   *If No, please provide the names, addresses and percentage ownership of all of the owners of this corporation. You may use a separate sheet if you need more space.*

Go to Item 20.

20.   *Please provide the names and titles of the officers or directors of this company*
          President   MAHMOOD  AHMAD, MD
      Vice President   MAZHNA  HUSSIN, MD
          Secretary   SHERRIE  RICE,
          Treasurer   MASOOD  AHMAD
   Specify additional
       titles below

*If you need additional space for the corporate officer list, please attach the list as a separate document.*

**PART V: OPERATIONS**

21. Please respond to the following statements/questions on the bottom of this sheet and the back of it. You can attach a separate sheet if you need more space to respond, or if you wish to use a computer to record and print your responses.

    (A) Describe in detail how the pharmacy will comply with regulation 09-00-0001 – patient counseling, patient profile, drug use evaluation.

    (B) Describe in detail how the pharmacy will ensure patient freedom of choice of providers.

    (C) How will your pharmacy and the pharmacist in charge ensure that patient confidentiality is maintained?

    (D) Describe the computer hardware and software that will be used in the pharmacy.

    (E) How does your pharmacy ensure a valid patient/physician relationship?

    (F) Websites – if you do not have a website, please state that.

        1. If you have a website, do you provide referrals to physicians or other practitioners?    Yes___ No _X_
        If you answered this question *Yes*, please explain your relationship with these physicians and practitioners.

    (G) Do you provide links to websites that provide referrals to physicians, practitioners or other organizations?
                                                                            Yes___ No _X_
        If you answered this question *Yes*, please describe your relationship with these other websites.

    (H) Do you process prescriptions for insurance companies and PBMs?           Yes___ No _X_
        If you answered this question  *Yes*, please name those companies.

    (I) Do you process prescriptions for individual patients?               Yes _X_ No___
        If you answered this question *Yes*, what are your requirements for processing patient prescriptions?

    (J) Do you fill prescriptions from physicians that are contacted through the internet?    Yes___ No _X_

    (K) Do you have any agreements to act as a fulfillment center for any websites or    Yes___ No _X_

    (L) If you are involved in any aspect of telemedicine?                    Yes___ No _X_
        If *Yes*, please describe (Attach a separate sheet, if necessary)

See Attached

Part V:  OPERATIONS

(A)  The pharmacy will comply with regulation
09-00-0001 with the use of a pharmacy computer software
program to record patient information as outlined in
Regulation 9 as well as patient information sheets
outlining all information to be used in effective
patient counseling and drug interactions.  The
pharmacist will also have access to online reference
materials for additional resources when needed.

(B)  Patients with pain management contracts will be
given their prescriptions and given the option of using
the pharmacy at United Pain Care for their convenience.

(C)  Paient confidentiality will be maintained by
having a designated area that is private for patient
consultation.

(D)  The computer hardware and software to be used in
the pharmacy will be selected in the near future and
will be available for inspection when pharmacy is
licensed to begin operating.

(E)  The pharmacy ensures a valid patient/physician
relationship by having the clinic located in the
building where verification and staff are readily
available.

(I)  The pharmacy will require a pharmacist in charge
on duty that will abide by all  regulations set forth
in the State Board of Pharmacy Law Book required to
process prescriptions for individuals.

**PART VI: LICENSURE**
*Attach copies of the following documents to this application:*
    (A) *A copy of the floor plan of the pharmacy showing the entrances and how it relates to other businesses in the building if it is not a free-standing building.*
    (B) *A copy of your lease if you do not own the facility.*

**PART VII: APPLICATION FEE**       *Check one of the following.*
    [✗]   This is a new application.
          What is the date this application will be submitted to the Arkansas State Board of Pharmacy? Add thirty days. What is the new date?_____
               If this date falls in an even numbered year, the fee is $450.00
               If this date falls in an odd-numbered year, the fee is $300.00

    [   ]   This is a change of ownership of a current license holder.
          The fee for a change of ownership is $150.00.

**PART VIII: CERTIFICATION**       *Please read carefully and sign below.*
I swear, or affirm that all statements made herein and on the attached forms are true and correct. All of the provisions of Arkansas laws and regulations related to the practice of pharmacy in Arkansas will be faithfully observed during the period any permit issued may be in force and effect.

I swear and affirm that I know where to locate the statutes and regulations related to the practice of pharmacy in Arkansas. (They are available online at the Arkansas State Board of Pharmacy website in the Pharmacy Lawbook section under the Pharmacy Practice Act § 17-92-101 *et seq* and Regulations 1 through 12.)

By virtue of filing this application, I do solemnly swear or affirm that I am of good moral character, and that I understand the instructions and terms as set forth in this application form, that I have personally completed this form, that the information given in this application is true, correct and complete to the best of my knowledge. I authorize the Arkansas State Board of Pharmacy to review files pertaining to this application and related documents, and all law enforcement records, administrative records, and court documents to confirm the accuracy and completeness of the information provided herein. This application and signature shall act as authorization for entities in possession of applicable information to release such information to the Arkansas State Board of Pharmacy.

Signature of Owners/Representative: *Mahmood Ahmad, MD*

Print the name of the Owner/Representative: MAHMOOD AHMAD, MD

Position : PRESIDENT                  Date: 1/26/2010

Signature of Pharmacist in Charge: *Carla M. Harrison*

Print the name of the Pharmacist in Charge: Carla M. Garrison

Position : Pharmacist               Date: 1-27-10

## Checks should be made payable to: *Arkansas State Board of Pharmacy.*

Return the completed application and all related documents and fees to: Arkansas State Board of Pharmacy, 101 East Capitol, Suite 218, Little Rock, AR 72201; Telephone: 501-682-0190
Website: *http://www.arkansas.gov/asbp*





# A NEW PAIN CLINIC FOR
## DR. MAHMOOD AHMAD
### Sherwood, Arkansas

FLOOR PLAN



# Arkansas State Board of Pharmacy

101 E. Capitol, Suite 218, Little Rock, Arkansas 72201

## RETAIL PHARMACY LICENSE PERMIT- 2011

United Pain Care, License No. AR20627
7481 Warden Road
Sherwood, AR 72120

This is to certify that the Pharmacy named hereon located at 7481 Warden Road, Sherwood, AR 72120 is registered under the provisions of the Arkansas Pharmacy Practice Act, other Arkansas statutes, and Arkansas Pharmacy Regulations.

Carla M. Garrison, PD09611

is the Pharmacist in Charge of this pharmacy department.

Permit No.:047719         Permit Issued:   01/27/2010

## License Expires:        December 31, 2011

*This permit is not transferable and must be prominently displayed.*
*This permit is not transferable and must be prominently displayed.*

Arkansas State Board of Pharmacy

United Pain Care, No. AR20627
7481 Warden Road
Sherwood, AR 72120

Permit: 047719         Date Entered: 1/27/2010

Amount Paid:    $150.00        Pharmacy Application Fee- Even Year
                $150.00        Pharmacy Application Fee- Even Year

TOTAL:          $300.00

EXHIBIT

5

# Arkansas State Board of Pharmacy

101 E. Capitol, Suite 218, Little Rock, Arkansas 72201

## RETAIL PHARMACY LICENSE PERMIT- 2013

United Pain Care, License No. AR20627
7481 Warden Road,
Sherwood, AR 72120

This is to certify that the Pharmacy named hereon located at 7481 Warden Road , Sherwood, AR 72120 is registered under the provisions of the Arkansas Pharmacy Practice Act, other Arkansas statutes, and Arkansas Pharmacy Regulations.

Pamela Hastings West, PD11636

is the Pharmacist in Charge of this pharmacy department.

Permit No.:060465        Permit Issued:   11/08/2011

## License Expires:        December 31, 2013

This permit is not transferable and must be prominently displayed.
This permit is not transferable and must be prominently displayed.

Arkansas State Board of Pharmacy

United Pain Care, No. AR20627
7481 Warden Road,
Sherwood, AR 72120

Permit: 060465        Date Entered:  11/7/2011

Amount Paid:     $300.00        Pharmacy Renewal Fee

TOTAL:        $300.00

EXHIBIT

6



**Arkansas State Board of Pharmacy**
**101 East Capitol, Suite 218**
**Little Rock, AR 72201**
**501-682-0190 ◆ Fax 501-682-0195**
**www.pharmacyboard.arkansas.gov**

ARKANSAS STATE
BOARD OF PHARMACY

JUL 03 2012

RECEIVED

## Change of Pharmacist In Charge Form – Fee: $35

**1. Facility Name:**
UNITED PAIN CARE PHARMACY ———— SHERWOOD PHARMACY

**2. Facility License Number:**
(AR, HP, OS, CC #####)    AR 20627

**3. Physical Location of Facility (street, city, zip code):**
7481 Warden Road   Suite C
Sherwood, AR   72120

**4. Telephone Number (area code):**
501-588-4175

**5. Fax Number (area code):**
501-377-9233

**6. Date of change of PIC:**
July 2, 2012

**7. Name of Exiting PIC:**
PAMELA WEST

**8. License Number of Exiting PIC:**
(PD#####)    PD11636

**9. Will the exiting pharmacist in charge continue working in this facility? [ ] Yes [✓] No**
If the answer is **NO**, what is the last date worked?

**10. Name of the New PIC:**
ALBERT RINCHUSO

**11. License Number of the New PIC:**
(PD#####)    PD07293

**12. Email of New PIC:**
PIC@Sherwood pharma.com

**13. Has the New PIC taken the PIC/Preceptor Exam? [✓] Yes [ ] No**

(This is a requirement for In State Retail Pharmacies/Hospitals/Charitable Clinics only.
If you need an exam, or are unsure if the exam has been taken, please contact the Board office)

**14. Facility Hours of Operation:**
(Total Hours per Week)    40

**15. Number of hours per week the new PIC will be working:**    40

**16. Name of person with whom the State Board of Pharmacy can correspond regarding this change (please print name):**
Albert Rinchuso

**17. Email of person with whom the State Board of Pharmacy can correspond regarding this change:**
PIC@Sherwood pharma.com

**For In State Retail Pharmacies/Hospitals:** Please attach an inventory of Schedule II, III, IV and V drugs. The inventory is to be signed by both the exiting and the new PIC of this facility. The inventory should be done on the last day of employment (or last day of work as PIC) of the exiting PIC. (If both pharmacists are not present for the inventory, the new PIC may either sign the inventory of the exiting PIC, or perform a new inventory at the beginning of business on the first day of employment if a few days have passed since the exiting PIC's inventory was taken.)

Albert Rinchuso
Printed name of Owner or Owner's Representative (may be PIC)

Albert Rinchuso
Signature of Owner or Owner's Representative (may be PIC)

July 2, 2012
Date

EXHIBIT
7

United Pain Care Pharmacy
7481 Warden Road
Sherwood, AR 72120
(501) 588-4175  Fax: (501) 377-9233

DRUG INVENTORY REPORT LISTING
Drug Inventory Summary by DEA Class
Mon Jul 2, 2012

Page   1
PID: 0423436
NPI: 1831327022
Email: pharmacy@unitedpaincare.com

| DRUG/ NDC | PROD. CODE | DEA/ TAX | LABELER/ GENERIC | PACKAGE/ TYPE | FORM/ STRENGTH | ON-HD/ RO QTY | OBS PRI | 340B SCH1/PRI | MAC SCH2/PRI | SCH3 | AWP VENDOR | COST NAME |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AMPHETAMINE SALTS 20 MG TAB | 2 | | BARR | 100.000 | TAB | 20 | N | N | $0.0000 | | $1.7140 | $1.1500 |
| 0555-0973-02 | | N | 005001 | Rx Gen | 20 MG | 0 | | PRICE001 | | | | |
| CONCERTA ER 36 MG TABLET | 2 | | JANSSEN PHAR | 100.000 | TAB | 60 | N | N | $0.0000 | | $7.6141 | $5.8601 |
| 50458-586-01 | | N | 045982 | Rx Brd | 36 MG | 0 | | PRICE001 | | | | |
| CONCERTA ER 54 MG TABLET | 2 | | JANSSEN PHAR | 100.000 | TAB | 10 | N | N | $0.0000 | | $8.2850 | $6.3900 |
| 50458-587-01 | | N | 047318 | Rx Brd | 54 MG | 0 | | PRICE001 | | | | |
| DEXTROAMP-AMPHET ER 20 MG C | 2 | | GLOBAL PHARM | 100.000 | CAP | 130 | N | N | $0.0000 | | $6.1315 | $4.8800 |
| 00115-1331-01 | | N | 048702 | Rx Gen | 20 MG | 0 | | PRICE001 | | | | |
| FOCALIN XR 15 MG CAPSULE | 2 | | NOVARTIS | 100.000 | CPMP | 61 | N | N | $0.0000 | | $6.8719 | $4.8882 |
| 0078-0493-05 | | N | 061317 | Rx Brd | 15 MG | 0 | | PRICE001 | | | | |
| OXY/APAP 10-650 | 2 | | WATSON LABS | 100.000 | TAB | 2 | N | N | $1.4187 | | $1.3768 | $0.4639 |
| 0591-0825-01 | | N | 043761 | Rx Gen | 10MG-650MG | 0 | | PRICE001 | | | | |
| OXY/APAP 5-325 | 2 | | MALLINCKRODT | 100.000 | TAB | 1 | N | N | $0.2340 | | $0.3105 | $0.0400 |
| 00406-0512-01 | | N | 004222 | Rx Gen | 5MG-325MG | 0 | | PRICE001 | | | | |
| OXYCONTIN 30 MG TABLET | 2 | | PURDUE PHARM | 100.000 | TAB | 47 | N | N | $0.0000 | | $6.5677 | $4.9215 |
| 59011-430-10 | | N | 063516 | Rx Brd | 30 MG | 0 | | PRICE001 | | | | |
| VYVANSE 20 MG CAPSULE | 2 | | SHIRE US INC | 100.000 | CAP | 70 | N | N | $0.0000 | | $6.2621 | $4.7343 |
| 59417-102-10 | | N | 063645 | Rx Brd | 20 MG | 0 | | PRICE001 | | | | |

_Albert Rincheso_

Lic # P.D. 07293

```
United Pain Care Pharmacy              DRUG INVENTORY REPORT LISTING                        Page    1
7481 Warden Road                     Drug Inventory Summaryby DEA Class            PID: 0423436
Sherwood, AR 72120                           Mon Jul 2, 2012                       NPI: 1831327022
(501) 588-4175  Fax: (501) 377-9233                            Email: pharmacy@unitedpaincare.com
```

| DRUG/ NDC | PROD. CODE | DEA/ TAX | LABELER/ GENERIC | PACKAGE/ TYPE | FORM/ STRENGTH | ON-HD/ RO QTY | OBS PRI | 340B SCH1/PRI | MAC SCH2/PRI | AWP SCH3 | COST VENDOR NAME |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ACETAMINOPHEN-COD #4 TABLET | 3 | | MALLINCKRODT | 100.000 | TAB | 262 | N | N | $0.3833 | $1.0855 | $0.2328 |
| 0406-0485-01 | | N | 004169 | Rx Gen | 300MG-60MG | 0 | | PRICE001 | | | |
| BUTRANS 10 MCG/HR PATCH | 3 | | PURDUE PHARM | 4.000 | PATC | 2 | N | N | $0.0000 | $60.1020 | $47.9600 |
| 59011-751-04 | | N | 059590 | Rx Brd | 10 MCG/HR | 0 | | PRICE001 | | | |
| FORTESTA 10 MG GEL PUMP | 3 | | ENDO PHARM I | 60.000 | GEL | 60 | N | N | $0.0000 | $5.9248 | $4.1163 |
| 63481-183-16 | | N | 062542 | Rx Brd | 10 MG (2%) | 0 | | PRICE001 | | | |
| PHENDIMETRAZINE 35 MG TAB | 3 | | SANDOZ | 100.000 | TAB | 25 | N | N | $0.0000 | $0.2107 | $0.0000 |
| 0185-4057-01 | | N | 005170 | Rx Gen | 35 MG | 0 | | PRICE001 | | | |
| PHENDIMETRAZINE ER 105 MG C | 3 | | SANDOZ | 100.000 | CAP | 40 | N | N | $0.0000 | $1.2873 | $0.7415 |
| 00185-5254-01 | | N | 005169 | Rx Gen | 105 MG | 0 | | PRICE001 | | | |
| SUBOXONE 2 MG-0.5 MG SL FIL | 3 | | RECKITT BENC | 1.000 | FILM | 6 | N | N | $0.0000 | $4.0400 | $3.5600 |
| 12496-1202-01 | | N | 066635 | Rx Brd | 2 MG-0.5MG | 0 | | PRICE001 | | | |

*Albert Rinehart*

*Lic # P.D. 07293*

```
United Pain Care Pharmacy              DRUG INVENTORY REPORT LISTING                        Page   1
7401 Warden Road                     Drug Inventory Summary by DEA Class          PID: 0423436
Sherwood, AR 72120                          Mon Jul 2, 2012                        NPI: 1831327022
(501) 588-4175  Fax: (501) 377-9233                                 Email: pharmacy@unitedpaincare.com
```

| DRUG/ NDC | PROD. CODE | DEA/ TAX | LABELER/ GENERIC | PACKAGE/ TYPE | FORM/ STRENGTH | ON-HD/ RO QTY | OBS PRI | 340B SCH1/PRI | MAC SCH2/PRI | AWP SCH3 | COST VENDOR NAME |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BUTORPHANOL 10 MG/ML SPRAY | | 4 | MYLAN | 2.500 | SPRY | 1 | N | N | $0.0000 | $75.2500 | $15.9000 |
| 0378-9639-43 | | N | 016674 | Rx Gen | 10 MG/ML | 0 | | PRICE001 | | | |
| FLURAZEPAM 15 MG CAPSULE | | 4 | MYLAN | 100.000 | CAP | 80 | N | N | $0.0975 | $0.2875 | $0.0500 |
| 00378-4415-01 | | N | 003691 | Rx Gen | 15 MG | 0 | | PRICE001 | | | |
| FLURAZEPAM 30 MG CAPSULE | | 4 | MYLAN | 100.000 | CAP | 19 | N | N | $0.1148 | $0.3465 | $0.0000 |
| 0378-4430-01 | | N | 003692 | Rx Gen | 30 MG | 0 | | PRICE001 | | | |
| LUNESTA 3 MG TABLET | | 4 | SUNOVION PHA | 100.000 | TAB | 4 | N | N | $0.0000 | $7.8480 | $6.1830 |
| 63402-193-10 | | N | 058482 | Rx Brd | 3 MG | 0 | | PRICE001 | | | |
| PHENTERMINE 30 MG CAPSULE | | 4 | SANDOZ | 100.000 | CAP | 93 | N | N | $0.0000 | $1.6498 | $0.0000 |
| 0185-5000-01 | | N | 005154 | Rx Gen | 30 MG | 0 | | PRICE001 | | | |
| PHENTERMINE 37.5 MG TABLET | | 4 | MUTUAL PHARM | 1000.000 | TAB | 13 | N | N | $0.0000 | $1.4500 | $0.4177 |
| 53489-406-10 | | N | 005159 | Rx Gen | 37.5 MG | 0 | | PRICE001 | | | |
| TRIAZOLAM 0.25 MG TABLET | | 4 | ROXANE LABS. | 10.000 | TAB | 111 | N | N | $0.3251 | $0.6660 | $0.1360 |
| 0054-4859-51 | | N | 003694 | Rx Gen | 0.25 MG | 0 | | PRICE001 | | | |
| ZOLPIDEM TART ER 12.5 MG TA | | 4 | PAR PHARM. | 100.000 | TAB | 10 | N | N | $0.0000 | $6.1163 | $3.0000 |
| 10370-116-10 | | N | 059697 | Rx Gen | 12.5 MG | 0 | | PRICE001 | | | |
| ZOLPIDEM TART ER 6.25 MG TA | | 4 | ACTAVIS ELIZ | 100.000 | TAB | 40 | N | N | $0.0000 | $6.1163 | $4.3064 |
| 0228-3481-11 | | N | 059696 | Rx Gen | 6.25 MG | 0 | | PRICE001 | | | |

*Albert Rincharo*
*Lic# P.D. 07293*

```
United Pain Care Pharmacy            DRUG INVENTORY REPORT LISTING                        Page    1
7481 Warden Road                  Drug Inventory Summary by DEA Class         PID: 0423436
Sherwood, AR 72120                        Mon Jul 2, 2012                      NPI: 1831327022
(501) 588-4175  Fax: (501) 377-9233                              Email: pharmacy@unitedpaincare.com
```

| DRUG/ NDC PROD. CODE | DEA/ TAX | LABELER/ GENERIC | PACKAGE/ TYPE | FORM/ STRENGTH | ON-HD/ RO QTY | OBS PRI | 340B SCH1/PRI | MAC SCH2/PRI | AWP SCH3 | COST VENDOR NAME |
|---|---|---|---|---|---|---|---|---|---|---|
| CHERATUSSIN AC SYRUP | 5 | QUALITEST | 118.000 | LIQ | 113 | N | N | $0.0000 | $0.0236 | $0.0100 |
| 00603-1075-54 | N | 045669 | OTC Gen | 100-10MG/5 | 0 | | PRICE001 | | | |
| DIPHENOXYLATE-ATROPINE TAB | 5 | GREENSTONE L | 100.000 | TAB | 110 | N | N | $0.2138 | $0.5333 | $0.1285 |
| 59762-1061-01 | N | 002841 | Rx Gen | 2.5-.025MG | 0 | | PRICE001 | | | |
| LYRICA 100 MG CAPSULE | 5 | PFIZER US PH | 90.000 | CAP | 30 | N | N | $0.0000 | $3.3668 | $2.7010 |
| 0071-1015-68 | N | 057802 | Rx Brd | 100 MG | 0 | | PRICE001 | | | |
| LYRICA 50 MG CAPSULE | 5 | PFIZER US PH | 90.000 | CAP | 188 | N | N | $0.0000 | $3.3668 | $3.0000 |
| 0071-1013-68 | N | 057800 | Rx Brd | 50 MG | 0 | | PRICE001 | | | |
| LYRICA 75 MG CAPSULE | 5 | PFIZER US PH | 90.000 | CAP | 26 | N | N | $0.0000 | $3.3668 | $2.5354 |
| 0071-1014-68 | N | 057801 | Rx Brd | 75 MG | 0 | | PRICE001 | | | |

*Albert Rinchero*

*Lic # P.D. 07293*

AR20627



# STATE OF ARKANSAS

## SECRETARY          OF STATE

### Mark Martin
ARKANSAS SECRETARY OF STATE

To All to Whom These Presents Shall Come, Greetings:

I, Mark Martin, Arkansas Secretary of State of Arkansas, do hereby certify that the following and hereto attached instrument of writing is a true and perfect copy of

### Application for Fictitious Name

of

### UNITED PHARMACY   *New name*

for

### UNITED PAIN CARE, LTD.

filed in this office
October 10, 2012.



**In Testimony Whereof,** I have hereunto set my hand and affixed my official Seal. Done at my office in the City of Little Rock, this 10th day of October, 2012.

*Mark Martin*

Arkansas Secretary of State

**EXHIBIT**

8



ARKANSAS
SECRETARY OF STATE
*Mark Martin*

*Search Incorporations, Cooperatives, Banks and Insurance Companies*

Printer Friendly Version

LLC Member information is now confidential per Act 865 of 2007

Use your browser's back button to return to the Search Results

Begin New Search

For service of process contact the Secretary of State's office.

| | |
|---|---|
| Corporation Name | UNITED PAIN CARE, LTD. |
| Fictitious Names | UNITED PHARMACY |
| Filing # | 800058278 |
| Filing Type | For Profit Corporation |
| Filed under Act | Dom Bus Corp; 958 of 1987 |
| Status | Good Standing |
| Principal Address | |
| Reg. Agent | MAHMOOD AHMAD M.D.<br>MAHMOOD AHMAD |
| Agent Address | 7481 WARDEN ROAD |
| | SHERWOOD, AR 72120 |
| Date Filed | 04/11/2005 |
| Officers | MAHMOOD AHMAD , Incorporator/Organizer<br>SHAMS KHAN , Tax Preparer<br>MAHMOOD AHMAD , President<br>MAAZ AHMAD , Secretary<br>ADIL AHMAD , Vice-President<br>MAZLINA B HUSSIN , Treasurer<br>MAZLINA B HUSSIN , Controller |
| Foreign Name | N/A |
| Foreign Address | |
| State of Origin | N/A |

**Purchase a Certificate of Good Standing for this Entity**      **Pay Franchise Tax for this corporation**

UnitedPainCare000139

EXHIBIT "C"


AFFIDAVIT AND VERIFICATION OF ANDY RINCHUSO, P.D.

STATE OF ARKANSAS     )
            ) ss
COUNTY OF PULASKI    )


    I, Andy Rinchuso, P.D., of lawful age, being first duly sworn and upon oath, state:

    1.    I am a pharmacist licensed by the state of Arkansas and the licensed pharmacist-in-charge of United Pharmacy in good standing with the Arkansas State Board of Pharmacy.

    2.    I have read the foregoing Complaint and understand its contents. I hereby state that the facts set forth in the Complaint and this Affidavit are true and correct to the best of my knowledge and belief.

    3.    If an injunction is not granted in this matter to maintain the status quo, United Pharmacy and its patients will suffer immediate and irreparable injury, loss, or damage as evidenced by the following:

       a)    Cardinal Health has cut-off the supply of any controlled substances to United Pharmacy, but led me to believe that its representatives were working on a resolution of the issue.

       b)    It is now apparent that Cardinal Health is not going to resume its duties under the Agreements. United Pharmacy has been

EXHIBIT

C

operating at a loss since Cardinal Health cut-off our supplies (currently an 85% loss in business not including new customers and goodwill).

c)    United Pharmacy is completely out of Schedule-II controlled prescription medications (also known as C-II and the ones primarily used for serious and chronic pain).    Despite numerous efforts, the pharmacy has been unable to obtain an alternate supply— the reason being given to me is that if Cardinal Health will not supply us then neither can they.

d)    It is burdensome, impractical, and sometimes impossible for a patient to fill all non-C-II mediations at United Pharmacy and then attempt to fill the balance of the C-II medications at another pharmacy. Some patients have told me that other pharmacies make them feel like second class citizens if they are only filling pain medications—the implication being that they are drug seeking and not really in pain. Others have limited transportation and mobility and are unable to conveniently travel to multiple locations for their doctor appointments and prescriptions. As a consequence, Cardinal Health has basically destroyed our ability to serve the sick, diseased, and hurting patients in North Little Rock and surrounding areas who come for treatment at the pain clinic next door and need their medications. This has also destroyed the patient's freedom of choice to choose the

pharmacy of their choice, the pharmacist-patient relationship, the goodwill we had established with the patients and the pharmacy's reputation, and has caused current and prospective patients of the pharmacy to lose confidence in it as a stable source of prescription services at a time when their medical conditions demand stability (which is especially damaging for a fairly new pharmacy like UNITED PHARMACY that is trying to establish itself in a competitive market).

4.     United Pharmacy has and has always maintained and satisfied all applicable licensing requirements of all applicable federal, state, and local governmental authorities to purchase, receive, possess, store, use, dispense, distribute, or otherwise dispose of pharmaceutical products and has fully and completely complied with the terms of the Agreements as evidenced by the following:

a)     United Pharmacy fills a high volume of controlled substance prescriptions because it is located next to a pain clinic. In my opinion as a pharmacist, the pain clinic is a reputable clinic and is operated by a board-certified interventional pain specialist (http://www.unitedpaincare.com/arkansas.php).

b)     I have personally discussed with the pain clinic and reviewed the pain clinic's policies and procedures in place to prevent the diversion of controlled substances. These policies and procedures are outstanding and are attached as Exhibit "1" to this affidavit.

c)     In addition to these pain clinic policies and procedures, I have an independent and corresponding duty under federal and state law to prevent the diversion of controlled substances from United Pharmacy. In this regard, the following policies and procedures are used by the pharmacy to guard against theft and diversion of controlled substances:

> an alarm system in case of a break-in;

> multiple security cameras;

> only the pharmacist-in-charge has keys to the pharmacy;

> only the pharmacist-in-charge orders controlled substances;

> only the pharmacist-in-charge checks in deliveries of controlled substances and this is done immediately to ensure accuracy;

> only the pharmacist-in-charge dispenses controlled substances;

> all controlled substances are stored in the pharmacy in accordance with DEA security requirements (21 CFR §1301.75);

> ➢ Large quantities of controlled substances are stored in a securely locked, substantially constructed separate safe;

> ➢ The pharmacist-in-charge keeps inventories of controlled substances as required by 21 CFR §1304.11;

> ➢ The dispensing pharmacist-in-charge has the duty to maintain a constant vigilance against forged or altered prescriptions. The law holds the pharmacist has a corresponding responsibility for assuring that a prescription for controlled substances is written for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice (21 CFR §1306.04 (a)) (compliance with this requirement is simplified by the working relationship established between the pharmacy and the pain clinic);

> ➢ The pharmacist-in-charge is familiar with the U. S. Department of Justice Drug Enforcement Administration website and its pharmacist guide for controlled substances (found at

http://www.deadiversion.usdoj.gov/pubs/manuals/pharm2/
index.html) and A Pharmacist's Guide to Prescription
Fraud
(http://www.deadiversion.usdoj.gov/pubs/brochures/pharm
guide.htm)

d)      The latest inspection conducted by the Arkansas State
Board of Pharmacy found no deficiencies in complying with the above
laws and I am aware of none.

5.      Pain is a legitimate medical condition for which controlled
substances were developed to treat. My obligations as a pharmacist are to
dispense medications for legitimate medical purposes while, at the same
time, being on guard for diversion of medications. I take these obligations
very seriously and to the best of my information, knowledge, and belief my
obligations have been ethically and legally fulfilled at **UNITED
PHARMACY**.

**FURTHER AFFIANT SAYETH NOT.**

_Andy Ronchuso P.D._
Andy Ronchuso, P.D.

Subscribed and sworn to before me this _11_ day of January, 2013.

_Sherrie Rice_
Notary Public

My commission expires:

_8-24-2016_



Page 22 of 22

07/02/2013 11:20 FAX                                    ☑001/004

# STATE OF ARKANSAS



## SECRETARY OF STATE

### Mark Martin
ARKANSAS SECRETARY OF STATE

To All to Whom These Presents Shall Come, Greetings:

I, Mark Martin, Arkansas Secretary of State of Arkansas, do hereby certify that the following and hereto attached instrument of writing is a true and perfect copy of

## Articles of Incorporation

of

## UNITED PHARMACY LTD

filed in this office
June 17, 2013.



**In Testimony Whereof,** I have hereunto set my hand and affixed my official Seal. Done at my office in the City of Little Rock, this 17th day of June, 2013.

*Mark Martin*
Arkansas Secretary of State

**EXHIBIT**

10

07/02/2013 11:21 FAX

FILED - Arkansas Secretary of State - Mark Martin - Doc#: 3611004001 - Filing#: 811035443 - Filed

The undersigned acting as incorporators of a corporation under the ARKANSAS PROFESSIONAL CORPORATION ACT (ACT 155 OF 1963), adopt the following Articles of Incorporation of such Corporation:

**First:**    The name of the Corporation is:

UNITED PHARMACY LTD

Must contain the words "Corporation", Incorporated", "Company", "Limited", or the abbreviation "Corp.", "Inc.", "Co.," or "Ltd." or words or abbreviations of like import in another language.

**Second:**    The number of shares which the Corporation shall have the authority to issue is:

100 share(s).

The par value of each share is 1

The designation of each class, the number of shares of each class, or a statement that the shares of any class are without par value are as follows:

| No. of Shares | Class | Series (if any) | Par Value Per Share Or Statement That Shares Are Without Par Value |
|---|---|---|---|
| 100 | ORDINARY | | $1 |

**Third:**    The street address of the initial registered office of this Corporation shall be located at:

| | |
|---|---|
| Street Address | 7481 WARDEN ROAD |
| City: | SHERWOOD |
| State: | AR        ZIP:   72120- |

and the name of the initial registered agent of this Corporation at that address is:

ALBERT ANTHONY RINCHUSO, P.D.

**Fourth:**    The name and address of each incorporator is as follows:

Name 1   ALBERT ANTHONY RINCHUSO, P.D.

Address 1   7481 WARDEN RD, SHERWOOD, AR 72120

Name 2
Address 2
Name 3
Address 3

The nature of the business of the Corporation and the object

07/02/2013 11:21 FAX

**Fifth:**    or purposes proposed to be transacted, promoted or carried on by it, are as follows:

  **(a)**    The primary purpose of the Corporation shall be:

      PHARMACY

  **(b)**    To conduct any business enterprise not contrary to law.

  **(c)**    To exercise all of the powers enumerated in Section 4-27-302 of the Arkansas Business Corporation Act.

**Sixth:**    Executed this 14th day of June, 2013

      THIS FILING HAS A DELAYED EFFECTIVE DATE OF JUNE 14TH, 2013.<BR>

**Signature:**    ALBERT ANTHONY RINCHUSO, P.D.

**Title:**    PRESIDENT
(Pres., other officer, Chairman of the Board or by Incorporator pending elections of corporate officers)