```
  1              IN THE UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF ARKANSAS
  2                       WESTERN DIVISION

  3    UNITED STATES OF AMERICA,

  4                     Plaintiff,

  5    v.                           No. 4:15CV00181 JM

  6                                 April 25, 2017
                                    Little Rock, Arkansas
  7
       UNITED PAIN CARE LTD
  8    and MAHMOOD AHMAD, MD,,

  9                     Defendants.

 10              EXCERPTED TRANSCRIPT OF TRIAL
                (Closing Arguments and Jury Verdict)
 11        BEFORE THE HONORABLE JAMES M. MOODY, JR.,
             UNITED STATES DISTRICT JUDGE, and a jury
 12        _____

 13    APPEARANCES:

 14    On Behalf of the Government:
           MS. SHANNON S. SMITH, Assistant U.S. Attorney
 15        MS. JAMIE GOSS DEMPSEY, Assistant U.S. Attorney
             U.S. Attorney's Office
 16          Post Office Box 1229
             Little Rock, Arkansas  72203-1229
 17
       On Behalf of the Defendants:
 18        MR. TIMOTHY O. DUDLEY, Attorney at Law
             114 South Pulaski Street
 19          Little Rock, Arkansas  72201

 20

 21

 22        Proceedings reported by machine stenography and displayed
       in realtime; transcript prepared utilizing computer-aided
 23    transcription.

 24

 25
```

Karen Baker, RMR, CRR, CCR
United States Court Reporter

1      [Excerpted here.]

2                        *  *  *  *  *

3          MS. SMITH:   Thank you, Your Honor.   This case is

4    about taking responsibility, and I'm asking each of you to find

5    that Dr. Ahmad and his pharmacy are responsible for the

6    violations that occurred.   This is my chance to get to take the

7    facts and the evidence that you've heard from the witness stand

8    and the pieces of paper that you've seen and sort of put those

9    together with the law to tell you what our case is about.

10   You've heard that diversion is a serious problem in Arkansas.

11   You heard that from Investigator Conner, you heard it from

12   Investigator Shortway.   And because of that, the Controlled

13   Substances Act and the DEA mandate a closed system when it

14   comes to controlled substances.   What you have to think about

15   here is who made the choice to participate in that closed

16   system.   It was Dr. Ahmad.

17         He didn't have to open a pharmacy.   He volunteered to

18   open a pharmacy, he made the choice to participate in a closed

19   system, and because of that, he has to abide by the regulations

20   that are set forth in the laws.   And he did not do that.   Some

21   of the things that the judge talked to you about is the burden

22   of proof, and I just want to touch on that for a second.   It's

23   not beyond a reasonable doubt.   This isn't a criminal case.

24   But one of the things that the jury instructions said is that

25   you decide by considering all of the evidence and deciding what

1    evidence is more believable.  I ask you to use your common

2    sense in this case when you're looking at the burden of proof.

3    What makes sense here?

4         Some of the things that we don't have to prove to you is

5    we do not have to prove to you that diversion actually

6    occurred.  We do not have to prove to you that those drugs

7    actually got onto the street and that somebody used them and

8    something occurred negatively with that person.  We do not have

9    to prove that.  Moreover, the judge read to you that United

10   Pain, LTD doing business as United Pharmacy has stipulated that

11   they dispensed, delivered or otherwise disposed of controlled

12   substances.  So you will not have to decide that either.  What

13   you've got to decide is who is responsible.  And Dr. Ahmad is

14   responsible for this.  Why should you hold him responsible?

15        Well, there's a common thread here, and what is that

16   common thread?  It's Dr. Ahmad.  When he decided to open up

17   this pharmacy, he listed himself as the incorporator and

18   organizer as set forth in Exhibit 1 with the secretary of

19   state.  When he decided to open the pharmacy, it was Dr. Ahmad

20   who filled out the application to operate a pharmacy.  And we

21   went through that, and that's Defendant's Exhibit 5, that he is

22   the one who filled out the application.  In that same

23   application, he also certified that he would abide by all the

24   laws to operate a pharmacy, and he signed it as the president

25   because he is the owner of the pharmacy.  Dr. Ahmad owns the

1  corporation, United Pain Care, LTD, and that owns the pharmacy.

2  Dr. Ahmad owns the pharmacy.

3       Additionally, in order to operate a pharmacy, you must

4  have a DEA registration.  And who is it that applied to have

5  the DEA registration for the pharmacy, Mahmood Ahmad.  He is

6  the one who was the registrant for the pharmacy.  In order to

7  have a pharmacy, you have to have drugs.  So who did he enter

8  into a contract with?  In Plaintiff's Exhibit 27, he entered

9  into a contract with Cardinal, who is a distributor, and when

10  he did that, he agreed that this was his signature and within

11  that contract, it says that Mahmood Ahmad will abide by all

12  applicable laws, rules, regulations, ordinances, and guidances

13  of Federal Drug Enforcement Administration.  He has to abide by

14  the laws that are set forth.

15       Also when he applied for the DEA registration, he is the

16  one that paid for it.  He used his credit card.  When the

17  pharmacy closed, who was it that surrendered their DEA

18  registration?  Was it the pharmacy?  No.  When he sold the

19  pharmacy and surrendered his DEA registration to the pharmacy,

20  who surrendered that?  It was Dr. Ahmad.  He is responsible.

21  When we talk about the pharmacists, who hired the pharmacists?

22  Dr. Ahmad.  And Mr. Rinchuso got on the stand and basically

23  admitted that he really wasn't even able to keep up with all of

24  his paperwork.  That in 30 years of being a pharmacist that

25  he'd never had to do all this paperwork, it was the pharmacy

1    tech.  That's what he stated.  He stated he was a one man show

2    when it came to the paperwork.

3        Who made the decision to hire someone who was not able to

4    keep up with the paperwork?  It was Dr. Ahmad.  On that note,

5    Mr. Rinchuso also testified that they had daily conversations,

6    daily conversations when Dr. Ahmad would even come into the

7    pharmacy and talk.  So who is the common thread here?  It is

8    Dr. Ahmad.  When we talk about responsibility and admitting it,

9    Dr. Ahmad, after the close of the inspection and the audit,

10   sent an e-mail to Kendall Shortway who is the lead investigator

11   stating that, however, being the owner of the pharmacy any

12   violations which are assessed against the pharmacy are

13   ultimately applicable to the company, which I own, since the

14   pharmacist is an employee.  He admits he is responsible.

15       After the inspection, Inspector Shortway testified that

16   they invited management to the meeting.  And who came to the

17   meeting to talk about the violations?  Dr. Ahmad and

18   Mr. Rinchuso.  He is management.  He owns the pharmacy.  What

19   else occurred?  Dr. Ahmad, when he was on the witness stand,

20   testified that he had each of his patients sign a contract that

21   indicated that they would use one pharmacy and he testified

22   that a majority of his patients used what pharmacy?  His

23   pharmacy.  So he had a good thing going there.  And

24   Mr. Rinchuso also testified that of all the prescriptions that

25   he filled while he was a pharmacist, a majority of them were

1  Dr. Ahmad's.  He indicated he tried to set up a real pharmacy

2  or some sort of wording like that and have flu shots, but the

3  real deal was, Dr. Ahmad was writing the prescriptions and they

4  were all going over to his pharmacy.

5       And when we talk about the theft report, there was a

6  theft report that came into evidence where we talked about the

7  drugs that went out.  At this point, the theft occurred

8  January 22nd of 2013, which is kind of right in the middle of

9  the audit period that we're talking about.  Mr. Rinchuso

10  testified that when he listed all of these numbers down here

11  for the drugs that had been stolen that night, that he had to

12  rely on the computer because he didn't have the paperwork.  At

13  this point, even if Dr. Ahmad had stuck his head in the sand

14  the whole time, at this point, he certainly knew that there was

15  a problem, there were regulations that needed to be followed,

16  and he needed to get that together.  And he needed to tell his

17  employees to get that together.  Moreover, you also heard

18  testimony that Dr. Ahmad has the DEA registration because he

19  dispenses a drug called Suboxone out of his clinic as a

20  physician.

21       As a physician dispensing Suboxone, you have to abide by

22  the same regulations that the pharmacy does.  Do not let him

23  stick his head in the sand and ignore his responsibility.  He

24  chose to open this pharmacy, he chose to reap the benefits from

25  it.  Do not let him hide behind his corporation and not accept

1   responsibility for this.  Both defendants are responsible for

2   the recordkeeping violations that took place.  So when you get

3   back to the jury room, you're going to have two sets of what we

4   call interrogatories.  They're basically questions that you'll

5   have to answer in order to reach your verdict.  The first one

6   I'll go over are for or against Dr. Ahmad.

7        The first one, remember that United Pain Care has

8   conceded that they dispensed, delivered or otherwise disposed

9   of controlled substances, so you won't have the same question

10  with these.  But as to Dr. Ahmad, you have to find from a

11  preponderance of the evidence that defendant, Dr. Mahmood

12  Ahmad, dispensed, delivered or otherwise disposed of controlled

13  substances.  Again, I ask that you use your common sense.  So

14  when you're looking at this, we've got to show that he did

15  that.  So when we talk about dispensing, I'm not trying to say

16  that Dr. Ahmad marched over to the pharmacy, got out the pill

17  bottles and scraped the pills into the bottle.  I'm not saying

18  that.  But as the owner of the pharmacy, as the one who hired

19  the employees who by their admission did not do a good job, he

20  hired basically an incompetent pharmacist, and by causing his

21  prescriptions to go over there and be filled, we have met our

22  burden of proof.

23        MR. DUDLEY:  Your Honor, I object to that.  That's

24  just a misstatement of the law.  It goes against the ruling the

25  Court made before we started.

1          THE COURT:  Can y'all approach, please?

2      (Bench conference reported as follows:)

3          THE COURT:  Mr. Dudley, I understand that she's

4  arguing that the evidence satisfies that, but what exactly is

5  the ruling that you're talking about?  I just wasn't following.

6          MR. DUDLEY:  You ruled that he's not responsible

7  simply because he owns stock in the corporation and the

8  pharmacy.  She just argued that because he's the owner and he

9  wrote prescriptions, he's dispensing drugs.  There's no way in

10  the world that's the law.

11          MS. SMITH:  I didn't say he dispensed them, I said

12  he caused them to be dispensed.  If you want to argue that's

13  separate and apart, you can.

14          THE COURT:  I'm going to look back at the real time.

15  Every time y'all talk, it resets and I can't scroll back so I'm

16  going to ask y'all to stop for a minute.  I don't read back

17  that she said exactly that.  But I could tell the jury that the

18  mere owning of a corporation isn't sufficient.  I think that's

19  the ruling I made.  I read back and she's basically arguing

20  that if you open a pharmacy and you hire a pharmacist, that's

21  dispensing and that's sufficient.  I mean, I think that's

22  different than the mere fact that if you have stock in a

23  corporation, you're liable for the employees.

24          MR. DUDLEY:  The whole purpose of that, Judge, is to

25  have the people who actually handle the drug record the

1  transactions.  There is no law that says hiring a pharmacy who

2  dispensed drugs means you're dispensing drugs.  That's just not

3  the law.

4            MS. SMITH:  May I respond?

5            THE COURT:  Sure.

6            MS. SMITH:  That is if that is what came -- that is

7  not what I'm saying.  I'm saying as the owner of the pharmacy,

8  you are responsible for what goes on with the pharmacy.  I

9  think that -- I mean, we've talked about --

10           MR. DUDLEY:  She's arguing respondeat superior

11  because he was the owner of the corporation that owned the

12  pharmacy and that's exactly the point you ruled on before we

13  started this trial.

14           MS. DEMPSEY:  I think also because -- sorry to jump

15  in.  Because she's referred to the evidence that he was writing

16  majority of the prescriptions for the pharmacy, so he was

17  causing prescriptions to be filled, therefore, go out.

18           MR. DUDLEY:  If that's true, any doctor whose

19  prescription was filled at that pharmacy would be a dispenser

20  under the Controlled Substance Act and they're stretching it

21  way beyond what the law will allow, Judge.  I do request the

22  Court to instruct the jury he cannot be held liable simply

23  because he owned United Pain Care which owned the pharmacy.

24  Because I think that's what she's arguing.

25           THE COURT:  Okay.  I can make that comment, but are

1    you requesting anything else?  I mean, that's the first

2    question is, is it objectionable.  The second one is what do

3    you want me to do it about it if I agree with you beyond that?

4            MR. DUDLEY:  I want the Court to instruct the jury

5    that the owner of a corporation who owns a pharmacy is not

6    liable simply because of that status.

7            MS. SMITH:  Am I allowed to say that he caused

8    prescriptions to be dispensed?  That was what raised the

9    objection.

10           THE COURT:  That's what I read back is that she's

11   arguing that, and dispense is not defined is my problem.  And

12   the one perhaps *Robinson* case that you referred to dealt with

13   an owner/operator and I don't have a case or anything to look

14   at where you've got an owner and non-operator.

15           MR. DUDLEY:  Judge, just take an example of some

16   doctor other than Dr. Ahmad who wrote a prescription and got

17   filled at that pharmacy.  Is the Court saying that under the

18   law, that doctor has dispensed drugs within the meaning of the

19   Controlled Substances Act?

20           THE COURT:  I'm not saying he's dispensed or not.

21   I'm saying they're arguing that the evidence shows that he is,

22   and I don't know what dispense means under this law.  I'm not

23   saying he did anything.  I mean --

24           MR. DUDLEY:  My problem though, Judge, is they're --

25   I think this is meant -- this law was meant to cover folks who

1   actually handle the drugs.  That's the closed system they argue

2   about.  Now they're going way outside of that and saying the

3   doctor who writes the prescription is dispensing the drugs.

4   Dr. Ahmad asked for permission to dispense drugs.

5          THE COURT:  I know all the facts, I'm just trying to

6   apply them to the lack of case law and the lack of definition

7   in the regulation.

8          MR. DUDLEY:  I understand.

9          MS. SMITH:  May I respond just for the record?

10         THE COURT:  Yes.

11         MS. SMITH:  So this is analogous to if you go in,

12  and we do have these cases, and the pharmacist, the techs,

13  everybody in the pharmacy and the owners are typically held

14  responsible.  So let's say hypothetically in Dr. Ahmad's

15  medical practice, he is billing and his biller is billing

16  fraudulently, it's the same scenario.  You're asking that the

17  biller be held responsible and Dr. Ahmad be absolved, in the

18  same situation.

19         MR. DUDLEY:  The problem is you keep saying he's the

20  owner.  He's not.

21         MS. SMITH:  Then I will say he's the owner of the

22  company that owns the pharmacy.

23         MR. DUDLEY:  You're saying he can be held liable

24  because of that and the judge has already ruled he can't.

25         MS. SMITH:  Your objection was when I said he caused

1    to be dispensed, so I'm asking the Court can I say he caused

2    drugs to be dispensed?

3              THE COURT:  I'm going to tell the jury that mere

4    ownership in the corporation that owns the pharmacy is not

5    sufficient to show negligence.

6              MR. DUDLEY:  When I talk, we're not talking about

7    negligence now, we're talking about dispensing.  I would just

8    say not sufficient to show liability.

9              THE COURT:  Well --

10             MS. SMITH:  I don't have the jury instruction in

11   front of me.

12             THE COURT:  You're talking about the interrogatory?

13             MS. SMITH:  Yes, sir.

14             THE COURT:  The question is whether or not an owner

15   of a pharmacy without more, if you admit that the pharmacy

16   dispensed as the owner, therefore, dispensed and I don't think

17   it's defined.

18             MR. DUDLEY:  Yes.  United Pain Care dispensed.

19   United Pain Care was the owner.  I admit that.  They're trying

20   to go beyond that and say now the owner of the owner.

21             THE COURT:  And I understand your point, but I don't

22   know that since dispensed isn't defined in the regulation.

23   We've gone around this tree and you understand my problem, but

24   I don't understand how to instruct around that issue when I can

25   say that ownership is insufficient to show negligence.  That's

1   the vicarious part or piercing the corporate veil part which

2   we've been talking about.  But whether or not he's considered

3   having dispensed because of his however layered ownership

4   interest, I don't have anything to look to.

5           MR. DUDLEY:  I'll take what you give me.

6           THE COURT:  Okay.

7           MS. SMITH:  Your Honor, am I able to say that he

8   caused these prescriptions to be dispensed?  Because he wrote

9   them and then they were taken next door.

10          THE COURT:  You can argue that the evidence shows

11  that.

12          MS. SMITH:  Okay.  That's fine.  Thank you.

13          THE COURT:  I'm not sure that's correct, but I don't

14  know what else to do with it.

15      (Proceedings continuing in open court at 9:32 AM.)

16          THE COURT:  Ladies and gentlemen, what I'm about to

17  tell you is not in the instructions, but it is a verbal

18  instruction that I'm giving you.  The mere ownership in the

19  corporation that owns the pharmacy is not sufficient to show

20  negligence.  The mere fact that Dr. Ahmad owns the pharmacy in

21  and of itself is not enough.  You have to find some negligence

22  beyond that to find in favor of the government against

23  Dr. Ahmad.  Go ahead, Ms. Smith.

24          MS. SMITH:  Thank you, Your Honor.  Back to the

25  interrogatory.  I've gone over a whole list of things that

1    Dr. Ahmad did, other than just owning the corporation that

2    owned the pharmacy.  And I submit to you that by opening up the

3    pharmacy and writing -- I believe Mr. Rinchuso testified

4    writing 90 percent of the prescriptions that were filled there,

5    that he caused those controlled substances to be dispensed,

6    delivered or otherwise disposed of.  So when you go back to the

7    jury room, that's the first question you have to answer as to

8    Dr. Ahmad.  And if you answer yes to that question, then you're

9    going to move on to all of the violations.  If you answer no to

10   that question, you can throw these away.  These questions that

11   I'm going to go over, which are all of the violations that

12   we've covered extensively with Ms. Shortway, are also applied

13   to United Pain Care, so I won't go through them twice.

14        Ms. Shortway testified about the DEA 222 forms.  That's

15   what this triplicate form is.  It is an order form.  She also

16   testified that when you have a DEA 222 form that it has to be

17   properly annotated.  And as the jury instructions set forth,

18   the Court has done a great job of explaining which exhibits

19   they refer to.  So when you take this verdict form back, you

20   can pull out Exhibit 11 and look to see what the United States

21   alleges is missing.  It is missing the date received and the

22   quantity.  And for that reason, that is a violation.  Then as

23   you go to the next interrogatory, that's going to be for

24   Exhibit 12 and 13, we are actually proving that something did

25   not exist, so there was no DEA 222 form for these particular

1  drugs.

2      So there was testimony as to Exhibit 12 that this invoice

3  shows that Schedule II controlled substances were ordered.

4  When you have Schedule II controlled substances, you must have

5  a DEA 222 and that is referenced in Exhibit 12 and that is also

6  covered in the jury instruction.  Then we move to what was also

7  not present.  It was a DEA 222 order form for Exhibit 13.  And

8  Exhibit 13 was a statement that referenced an invoice where

9  Schedule II controlled substances were ordered, and there was

10  no form that's required.  Then we move on to Exhibit 14.

11  Excuse me, 8.

12      We move to Exhibit 8 which was the computation chart

13  which you'll have all of the backup documentation for this.

14  But it shows that there were overages and underages of 10 of 11

15  drugs.  So when you go back to that jury verdict form, then you

16  are going to have the opportunity to check whether there

17  were -- they were properly maintained or weren't for each drug

18  that the judge read off.  Then as we go to the invoices, you

19  have a big stack of invoices, and the example that I'm using

20  just for closing is this one, and for every invoice in our

21  summary which is also in the jury instructions, there is 102

22  invoices that were not dated, and Investigator Shortway

23  testified that that is necessary to show when these drugs came

24  in.

25      So at the close of your deliberations, you're going to be

1   deciding whether there were these violations, and you've got to

2   decide whether there were 115.  For you note takers, I said 117

3   at the beginning.  That was my error.  There's 115 violations.

4   And the United States is asking you to find Dr. Ahmad liable

5   and United Pain Care LTD doing business as United Pharmacy.

6   Thank you.

7            MR. DUDLEY:  Your Honor, can I turn this podium

8   around?

9            THE COURT:  If you can.

10           MR. DUDLEY:  May it please the Court, members of the

11  jury, I've been trying lawsuits for 35 years and I love what I

12  do.  I love trying lawsuits, I love arguing, I love the give

13  and take of back and forth that occurs between lawyers when

14  you're trying suits.  One of the things that frustrates me to

15  death though is when a lawyer isn't straight up with the jury

16  on what the evidence has been and what the law is.  And

17  Ms. Smith has not been straight up with you on what the

18  evidence is and what the law is.  She wants you to hold

19  Dr. Ahmad liable for these recordkeeping errors because he

20  owned stock in a corporation which owned the pharmacy.  And the

21  judge just told you that's not the law.  He cannot be held

22  liable simply because he owns stock in a corporation that owned

23  the pharmacy.

24           That would be like saying I'm a stockholder in Walgreens

25  so if a Walgreens pharmacist makes a recordkeeping error, I'm

1   responsible for it.  That's what their argument is.  It's silly

2   and it's not the law, and you argue silly things and you ignore

3   the law only when you don't have the facts and the law on your

4   side.  She argued -- let me just list what she said -- he

5   incorporated and organized United Pain Care.  Yeah, he did.

6   Now, they're going to get to get back up here when I'm through.

7   I'm going to ask them to do this.  If there's anything in the

8   law the judge told you that says that makes him liable for

9   recordkeeping violations, point out to us what it is because

10  there ain't nothing in there that says that.

11         She says he completed the application for the

12  pharmaceutical license.  Actually he signed the application as

13  president of United Pain Care.  He didn't do that individually.

14  You can look at it and see.  But even so, if there's something

15  in the judge's instructions that says he can be liable for

16  these recordkeeping violations because he signed the

17  application as president of UPC, point it out in the

18  instructions where it says that.  Because it ain't there.  She

19  said he's the owner of the pharmacy and they fed that all

20  through this case, he's the owner of the pharmacy.  He is not

21  the owner of the pharmacy.  He is half owner of United Pain

22  Care which is a corporation which is a totally separate entity

23  from Dr. Ahmad.  Again, when we go back to the Walgreens,

24  that's like saying because I own stock in Walgreens, I'm the

25  owner of the pharmacy that Walgreens operates.  Not true.  It's

1    not the law.

2         You won't see anything in these instructions that the

3    judge gives you that says that's the law, so number one, he's

4    not the owner and number two, even if he was, the judge told

5    you that's not sufficient to prove his liability in this case.

6    She says he was a registrant of the pharmacy.  If you remember,

7    I questioned Ms. Shortway about that.  Who was the registrant

8    for this pharmacy.  And she says it's always the pharmacy.  And

9    if you look, we've gotten evidence registration, it says

10   registrant, United Pharmacy.  But they still want to say he's

11   the registrant of the pharmacy.  Their own records, the DEA's

12   own records contradicts that.

13        If you're being fair with the evidence, you don't get up

14   here and tell the jury something that the DEA's own records

15   contradict.  You only do that when you're stretching.  She said

16   he hired the pharmacists.  He did.  But, again, if there's

17   anything in the law the judge gave you that says that's a basis

18   for holding him responsible for any recordkeeping violation,

19   please point it out.  When they get back up here, I'm going to

20   ask them point out where in the law the judge gave you that

21   says he can be held responsible because he hired the

22   pharmacist.  Let's talk about what the law really is and what

23   they really have to prove.  The instruction on liability is

24   Court's Instruction Number 6.  It tells you on the second page

25   of the instruction what they have to prove.  I'm -- the judge

1    also told you an instruction that you'll get that you got to

2    consider these defendants separately.  It's like there's a

3    separate case against each defendant, so I'm going to talk

4    about them separately.

5         Let's talk about Dr. Ahmad first.  The judge told you

6    that the government must prove by the greater weight of the

7    evidence each of the following two elements.  They got to prove

8    two things against both defendants.  One is that Dr. Ahmad

9    dispensed, delivered or otherwise disposed of controlled

10   substances.  Now, I asked Ms. Shortway straight out, Did you

11   ever see anything to indicate Dr. Ahmad ever dispensed any

12   controlled substance?  She said, No.  Ever delivered any

13   controlled substance?  She said, No.  Ever disposed of any

14   controlled substance?  She said, No.  She gets up here and

15   argues, oh, but Dr. Ahmad dispensed or caused controlled

16   substances to be dispensed because he was the owner of the

17   pharmacy.

18        Number one, we've already knocked that in the head.  Or

19   number two, he wrote prescriptions that went to the pharmacy

20   that caused the pharmacy to dispense the medicine.  What do you

21   think dispensed means, particularly when we're talking about

22   controlled substances?  Remember Dr. Ahmad wanted to dispense

23   medication, controlled substances in his medical practice, and

24   he went to the state board and requested permission to be

25   allowed to do that and they denied him permission to do it.  So

1   he could not dispense drugs, controlled substances, in his own

2   medical practice. What does that mean? He could not give

3   drugs, he could not hand drugs to a patient to be taken out of

4   the office to be consumed somewhere else.

5       The medical board said he can't do that and now they want

6   to argue that because he writes a prescription that's filled at

7   the pharmacy, he's causing the dispensing of drugs. He is

8   causing the dispensing. He's causing the pharmacist to hand

9   the drugs over, but that's not what dispensing means.

10  Dispensing means you hand it over. Dr. Ahmad didn't hand over

11  any drugs. If they're correct in that interpretation, then any

12  doctor who wrote a prescription that's filled at that pharmacy

13  dispensed drugs. That's not true. It ain't right. It's a

14  made-up argument, and there's -- their own witnesses admit they

15  got no evidence that Dr. Ahmad dispensed drugs, and then they

16  want to get up here and argue against what their own evidence

17  showed. That's stretching.

18      So there's certainly no evidence in this record and their

19  witnesses admitted there's no evidence that Dr. Ahmad ever

20  dispensed any drugs. That ought to put the end to the case

21  against Dr. Ahmad. So let me talk about United Pain Care.

22  Now, I admit and I've stipulated that United Pain Care

23  dispensed drugs. United Pain Care is a corporation, but a

24  corporation only acts through its employees, and the pharmacist

25  here dispensed drugs so that means United Pain Care dispensed

1  drugs.  I ain't arguing that.  I agree they did it.  But that

2  doesn't end the inquiry.  The second thing that they have to

3  prove, and again, I'm going to go back to the judge's

4  instructions on the two elements.  One, for United Pain Care,

5  they dispensed drugs, and I admit they did.  And two, that

6  United Pain Care refused, I'm going to separate this because

7  there's two elements here.

8       Said refused to keep the required records.  No evidence

9  of that.  They don't even argue that.  They kept the records.

10  Or if they didn't refuse to keep it, negligently failed to keep

11  the required records.  Now, I asked you in opening statements

12  to please pay attention to see what evidence of negligence was

13  presented against the pharmacy.  I did that for a reason.  What

14  the government argues is some of these records were incorrect,

15  and because the records were incorrect, the pharmacy is liable.

16  But they're missing something.

17       They don't have to just prove that the records were

18  incorrect.  They did prove some records are incorrect, I admit

19  that.  But that's not all they have to prove and that's what

20  they want to argue is the records are incorrect so they're

21  liable.  No.  The records are incorrect because the pharmacy

22  acted in a negligent manner.  That's what they have to prove.

23  What did she tell you in closing argument that the pharmacist

24  did that was negligent?  What did she tell you about what

25  negligence caused these records to be wrong?  I didn't hear a

1   word.  What witness from the witness stand testified that

2   something was done that caused -- something negligent was done

3   that caused these records to be incorrect?  I didn't hear

4   anybody say a word.  So how do you determine that it was

5   negligence that caused the errors in the records?

6           The judge told you that negligence is the failure to

7   exercise ordinary care.  And ordinary care is the care a

8   reasonable person would exercise under the same or similar

9   circumstances.  Well, in this case, the records were kept by a

10  pharmacist.  And the testimony was, I think, from both the

11  government and defense witnesses, the testimony was that the

12  pharmacists keep these records and that's just a normal way

13  things are done.  Pharmacists keep the records for controlled

14  substances.  So to determine whether the pharmacist in this

15  case was negligent in the way he kept those records and that

16  negligence caused the error in the records, wouldn't they have

17  to show the way a pharmacist normally keeps the records, how a

18  pharmacist, what kind of ordinary care a pharmacist normally

19  uses, and then show that the pharmacist in this case deviated

20  from that standard?

21          Is that the only way they could show that the pharmacist

22  failed to exercise ordinary care?  Did you hear anything like

23  that?  It's not fair.  And it's not following the law to say

24  the pharmacist is responsible because there was an error in the

25  records.  That's not what the judge told you.  It's not what

1   the government has to prove.  The government has to prove

2   negligence.  So let's talk a little bit about the records

3   themselves, and I'm not going to bore you with a whole lot of

4   conversation on this, but let me talk to you a little bit.

5        One of the charges is there was -- I think they claim

6   there were two DEA form 222s missing.  Number one, I asked

7   Ms. Shortway when she was on the stand, Did you look in the DEA

8   record to see whether they had those forms?  No, she didn't.

9   So we don't know whether those forms were prepared and sent to

10  the DEA and the pharmacist's copies were misplaced or lost.

11  Could it mean that those DEA forms got put in the wrong file at

12  the pharmacy, that they fell down behind the file cabinet, that

13  they were stolen in a burglary?  Why are they missing?  We

14  don't know.  If you don't know why they are missing, how can

15  you find the fact that they are missing is negligent?  They've

16  got to show you that those forms are missing because of some

17  negligence on the part of some employee of the pharmacy, and

18  there's not a scintilla of evidence of that.

19       They also say that there is one DEA form 222 that is

20  inaccurate.  And she said what it was, and I'm sorry, I don't

21  remember.  I don't remember what the inaccuracy on the form is.

22  I think it was missing a quantity.  So if she's right, and I

23  think she probably is, the record was inaccurate.  But that's

24  not enough.  They've got to show some negligence, some act or

25  failure to act on the part of the pharmacist that caused that

1    record to be inaccurate.  There's not a word of testimony in

2    this case about why the record was inaccurate or what caused it

3    to be inaccurate.  Could it be normal for a busy pharmacist,

4    the pharmacist technician to fail to write down the number

5    which is what she's saying?

6          Could that happen without anybody being negligent?  If it

7    could happen without anybody being negligent, is that what

8    happened in this case?  Do we know?  Who's got the burden of

9    proving that?  They do.  And they haven't given you any proof

10   on it.  They say there were 102 invoices that don't have the

11   date and time on them, the date and time they were received.

12   You know, they have the invoices, invoices are dated.

13   Mr. Rinchuso testified that he put that information into their

14   computer system so the computer system would show the date and

15   time.  Or the date, I don't know if it showed the time, the

16   date that those controlled substances were received by the

17   pharmacy.  So all of the information the DEA requires was

18   there.  And they're saying hold the pharmacy liable because he

19   didn't put in his own handwriting on the invoice the date

20   received.

21         Well, you know, that may well be a technical violation of

22   the DEA regulations, but is that really negligence when all the

23   information is there and available to the DEA?  The fact that

24   he did not handwrite the date on an invoice is negligence?

25   That seems a stretch to me.  I can easily envision a pharmacist

1   who receives drugs and got a stack of invoices that goes

2   through there and has to go fill a prescription, forgets to

3   come back and write the date on the invoice.  I don't think

4   that's negligence.  That's what people do.  People forget,

5   people make mistakes.  That doesn't mean somebody's at fault

6   because there's not a handwritten date on an invoice.

7        So I ask that you be fair with the evidence, apply that

8   evidence to the law the judge gave you, and look at what they

9   have to prove and determine whether or not they proved it.

10  Because I submit they ain't even come close.  This ain't even a

11  close case.  I ask you to find, one, that Dr. Ahmad never

12  dispensed, delivered or disposed of controlled substances.  I'm

13  not even talking about negligence on his part.  He didn't keep

14  the records.  How could he negligently keep the records when he

15  never kept them at all?  There's just no evidence on either

16  element they have to prove against Dr. Ahmad.

17       And on the pharmacy, United Pain Care, again, I admit

18  they dispensed drugs, but there is no evidence that they kept

19  the records in a negligent manner or that they acted

20  negligently and that's what caused the errors in the record.

21  We ask that you find on the interrogatories that there was no

22  negligence on the part of either defendant and that Dr. Ahmad

23  never dispensed drugs.  Thank you.

24            THE COURT:  Ms. Smith.

25            MS. DEMPSEY:  Ladies and gentlemen, thank you for

1    your time the last two days.  I know we've gone kind of quick,

2    we've looked at a lot of stuff, and I appreciate your time

3    being here.  Without you, we couldn't have this trial.  So I

4    agree with Mr. Dudley that he's been doing this a long time and

5    I also don't doubt that he loves what he does, but I disagree

6    that the evidence and the law has been misrepresented by

7    Ms. Smith and myself.  And I want to explain to you why and I

8    want to remind you that only the judge can instruct you on the

9    law and you're going to have those instructions with you when

10   you go back to the jury room to deliberate.

11        First, Dr. Ahmad does not merely own stock in the

12   pharmacy.  He is a doctor with a pain practice and he wanted to

13   open a pharmacy.  He could not dispense the drugs himself, the

14   medical board said no, and so he said what I will do is go open

15   a pharmacy.  He did that voluntarily.  He set up the pharmacy

16   as a corporation and he told you on the stand his wife has

17   nothing to do with it.  He paid for the DEA registration for

18   the pharmacy and he signed the agreement with Cardinal Health

19   to distribute drugs.  He knows that drugs are going out of

20   there because he's writing the prescriptions and sending them

21   over there and the pharmacist is filling them.  He hired the

22   pharmacist.

23        And the pharmacist testified he talked to Ahmad every

24   day, sometimes twice a day, and that Dr. Ahmad prescribed the

25   majority of the drugs being dispensed at one time, 97 percent

1  of the prescriptions.  As to the negligence, you heard

2  Mr. Rinchuso testify himself.  In 30 years, he's never been

3  required to do paperwork.  Somebody else always handled that.

4  He didn't know what he was doing and if he was keeping up with

5  it on the computer, he was not keeping up with it on paper.  He

6  said he tried but he couldn't.  He said he could not say he did

7  every single time.  And with respect to the theft, he said he

8  had to rely on the computer.  If he had had accurate records in

9  January of 2013, he should have been able to explain how many

10  drugs were missing exactly.  He couldn't.

11      As to the violations, the DEA 222, the pharmacy is

12  required to keep a copy for two years.  The pharmacy is not

13  supposed to send a copy to DEA.  They were required to keep one

14  and they didn't have it.  As far as the DEA 222 that was not

15  annotated, remember that the DEA 222s are for Schedule II

16  controlled substances:  Your oxycodone, your hydrocodone.  You

17  can't order those drugs without that form.  That's why it's so

18  important for the date and the quantity to be there.  Those are

19  the drugs that are most typically diverted, and when those

20  forms are not annotated properly, that's bad for a pharmacist.

21      And as to the invoices, look at them yourself.  You can

22  see there's no dates, you can see whether they were checked in

23  or signed, and I'd submit to you there's no evidence that the

24  computer system showed anything was kept by when the dates came

25  in.  That information was not provided to DEA.  It's important

1   to keep tabs on these drugs as a pharmacist because these are

2   all controlled substances.  So I thank you for your time and

3   thank you.

4            THE COURT:  Ladies and gentlemen, as you can

5   imagine, there's rules you must follow when you go to the jury

6   room to deliberate.  First, you will select a foreperson and

7   that person will preside over your discussions and speak for

8   you here in court.  Second, it is your duty as jurors to

9   discuss the case with one another in the jury room and you

10  should try to reach an agreement if you can do this without

11  going against what you believe to be the truth, because all

12  jurors have to agree on the verdict.  Each of you must come to

13  your own decision but only after you have considered all the

14  evidence, discussed the evidence fully with your fellow jurors,

15  and listened to the views of your fellow jurors.  Don't be

16  afraid to change your mind if the discussion persuades you that

17  you should.

18           But do not come to a decision just because other jurors

19  think it's right or just to reach a verdict.  Remember you are

20  not for or against any party, you are the judges, the judges of

21  the facts, and your only job is to study the evidence and

22  decide what is true.  Third, if you need to communicate with me

23  during your deliberations, send me a note signed by one or more

24  of you, give the note to the courtroom security officer, and

25  I'll answer it as soon as I can either in writing or here in

1    court.  While you are deliberating, do not tell anyone,

2    including me, how many jurors are voting for either side.  I

3    don't want to know where you stand.

4         Your verdict has to be based only on the evidence and the

5    law that I give you in my instructions.  Nothing I have said or

6    done was meant to suggest what I think your verdict should be.

7    The verdict is entirely up to you.  Finally, the verdict forms

8    are your written decisions in this case.  I'm going to walk you

9    through the verdict forms.  So there are two sets of verdict

10   forms.  Everything that has to do with Dr. Ahmad has an A in

11   front of it.  I don't think you have a copy of the verdict

12   forms there, but I'll give you one.  So there's A1 through 7

13   and those will be stapled separately.  A stands for Ahmad,

14   should be easy enough.  They'll all be stapled together.

15         So the first interrogatory, A1, says, Do you find from a

16   preponderance of the evidence that Dr. Ahmad dispensed,

17   delivered or otherwise disposed of controlled substances?  Your

18   vote will be either yes or no.  All of these have to be

19   unanimous, all 12 of you must agree.  Once that's decided, the

20   foreperson will sign and date that form.  Sense the government

21   must prove two elements against Dr. Ahmad, if you answer no to

22   A1, you're through with Dr. Ahmad.  If you answer yes to number

23   1, you must answer the remaining interrogatories.

24         And that note is down there at the bottom that says if

25   you answer no to this interrogatory, you are done with this

1    set, meaning Dr. Ahmad's set, and you go on to the next set

2    which is interrogatory UPC, or United Pain Care Number 1.  See

3    how we did that for you.  Those are going to be stapled

4    together.  The first element is agreed to.  Everyone agrees

5    that a pharmacy dispenses drugs.  That's what they do.  So you

6    don't have to go through that.  You'll go through each

7    interrogatory and determine whether or not either United Pain

8    Care or Dr. Ahmad was negligent in each of the claims that we

9    went through, and it will direct you to an exhibit number.  So,

10   for instance, in the first claim, it says, Do you find from a

11   preponderance of the evidence that Dr. Ahmad refused or

12   negligently failed to maintain an accurate DEA 222 order form

13   for Schedule II controlled substances?  And it refers you to

14   Exhibit 11.

15        On each one of those claims, if you get past the first

16   one on Dr. Ahmad, you must decide either yes or no on that

17   claim.  When you get to the last verdict form if you get that

18   far on Dr. Ahmad, you have to decide that 102 times.  And so

19   for each one of the interrogatory number 8, it says if you've

20   answered yes to interrogatory number A7, indicate by a check

21   mark below which invoices you find were not properly annotated.

22   So you must go through all of Exhibit No. 14 and determine each

23   one of those invoices separately.  That's the same way for

24   United Pain Care's interrogatories.

25        Ladies and gentlemen, at this time we're going to gather

1  up the exhibits and get you a copy of the verdict forms back.

2       Raymond, can you be sworn?

3       (Courtroom security officer sworn).

4            THE COURT:  If y'all will follow Raymond back to the

5  room, the Court will get them together.  I'm not sure where the

6  verdict forms are, so I'll get those back to you as soon as I

7  make sure I've got the right set.

8       (Jury exits the courtroom.)

9            THE COURT:  I want to commend both sides for the way

10 y'all tried this case.  Y'all agreed to almost every exhibit,

11 you had minimal objections, which reduces the opportunity for

12 me to get reversed, which I appreciate.  And both sides were

13 well represented.  I just wanted to say that before the verdict

14 came back.  Court's in recess till the jury returns unless

15 y'all have got something else for the record.  I'm going to

16 send the defendant's book back, and we have 1 through 16 and --

17            MS. SMITH:  And 27.

18            THE COURT:  Yeah, 1 through -- did you fill in the

19 middle between 1 through 6 and 11 through 16?

20            MS. SMITH:  Yes.  And here was the 27.

21            THE COURT:  Y'all can just get together and find out

22 which set of exhibits go back and as long as y'all can agree on

23 them, we'll send them back.  Thank you.

24       (Recess from 10:07 AM until 12:04 PM, jury present.)

25            THE COURT:  Everyone be seated, please.

1  Mr. Finkelstein, has the jury elected a foreperson?

2          MR. FINKELSTEIN:  Yes, Your Honor.

3          THE COURT:  Are you that foreperson?

4          MR. FINKELSTEIN:  Yes, sir.

5          THE COURT:  Have y'all reached a verdict?

6          MR. FINKELSTEIN:  Yes, sir.

7          THE COURT:  Would you mind handing your verdict

8  forms to Raymond, please?

9      I have two packages of correctly completed verdict forms.

10  With regard to Dr. Ahmad, interrogatory A-1 reads:  Do you find

11  from a preponderance of the evidence that Dr. Mahmood Ahmad

12  dispensed, delivered, or otherwise disposed of controlled

13  substances?  Verdict is:  No.  Dated 4/25/17, signed by Hugh

14  Finkelstein.  Is this the jury's verdict, Mr. Finkelstein?

15          MR. FINKELSTEIN:  Yes, sir.

16          THE COURT:  All right.  The jury properly followed

17  the instructions and didn't finish the rest of the

18  interrogatories on that particular package.

19      On interrogatory number UPC-1, do you find from a

20  preponderance of the evidence that defendant, United Pain Care,

21  LTD, DBA United Pharmacy, refused or negligently failed to

22  maintain an accurate DEA 222 order form for Schedule II

23  controlled substances as set forth in Exhibit 11 as required by

24  law?  The answer is Yes, dated 4/25/17.  And signed by

25  foreperson, Hugh Finkelstein.  Is that the jury's verdict?

1          MR. FINKELSTEIN:  Yes, sir.

2          THE COURT:  Mr. Dudley, the verdict is yes for the

3   rest of them.  Do you want me to read all of the verdict forms?

4          MR. DUDLEY:  No, Your Honor.

5          THE COURT:  Is it your verdict -- is it the jury's

6   verdict, Mr. Finkelstein, of a finding of negligence on all of

7   the claims of the government as set forth in your verdict

8   forms?

9          MR. FINKELSTEIN:  Yes, sir.

10         THE COURT:  All right.  Does the government wish to

11  poll the jury?

12         MS. SMITH:  No, Your Honor.

13         THE COURT:  Do you, Mr. Dudley?

14         MR. DUDLEY:  No, Your Honor.

15         THE COURT:  Ladies and gentlemen, at this time I'm

16  going to excuse you.  If you'll wait just a second I'll come

17  back and thank you officially and then I'll let you be about

18  your business.  Everyone please stand as the jury departs.

19      (Jury exits the courtroom.)

20         THE COURT:  We'll make copies of the verdict forms.

21  I guess we'll need to have the second phase tomorrow morning.

22  But what does that do to the, not the subrogation claim, but

23  the indemnification claim?

24         MR. DUDLEY:  I don't think that affects it.

25         THE COURT:  What do you mean?  We'll still need one?

1    MR. DUDLEY:  I think so.  Well, that kind of depends

2  on what kind of penalty you impose.

3        THE COURT:  I understand that, whether or not it

4  would be worth the time, but I was trying to work my mind

5  around a company going after its employees, like a truck

6  company got held responsible, the truck company go against or

7  have a third party claim against its trucker as opposed to the

8  doctor independently having that claim.

9        MR. DUDLEY:  I hadn't thought about that and haven't

10  researched it either, so I don't know the answer.  I will say

11  this.  I think that moots the doctor's testimony in the penalty

12  phase.  He was going to testify about Dr. Ahmad's practice.  I

13  don't know how that has anything to do with penalty on the

14  pharmacy.

15        MS. SMITH:  Well, I think that's a good point,

16  although I would -- may I think about that?

17        THE COURT:  You can think about it.  I'm aware of

18  some of it generally.  I'm not sure how probative it would be

19  as to essentially -- I can't remember the guy's name --

20        MR. DUDLEY:  Rinchuso?

21        THE COURT:  Yeah, Rinchuso is basically the one who

22  is the violator.

23        MS. SMITH:  Under the -- I understand that.  But I

24  do -- under the harm to the public, that can be considered

25  and --

1          THE COURT:  But he's not a dispenser.

2          MS. SMITH:  He is not, according to the jury's

3    verdict.  However, he is the one, all the prescriptions that

4    were filled at the pharmacy were his.

5          MR. DUDLEY:  I don't know that we need to argue

6    this.  I would ask if we can start at ten tomorrow.

7          THE COURT:  Sure.

8          MS. SMITH:  Let me think about it.  But at this

9    point, I'd like to plan to start if that's tomorrow and

10   we'll --

11         THE COURT:  We'll start at ten tomorrow, and go as

12   long as we need to realizing I've got, between one and two, I

13   have a kind of weird waiver and plea that I need to take care

14   of.

15         MR. DUDLEY:  I've probably got five minutes of

16   testimony.  I ain't going to take much time.

17         THE COURT:  Just a little bit longer than your

18   openings.

19         MR. DUDLEY:  That's right.

20         MS. SMITH:  Thank you.

21         THE COURT:  All right.

22         (Proceedings adjourned at 12:10 PM.)

23

24

25

1      REPORTER'S CERTIFICATE

2      I certify that the foregoing is a correct excerpted

3  transcript from the proceedings in the above-entitled matter

4  held on April 25, 2017.

5

6

7

8  /s/ Karen Baker, RMR, CRR, CCR
   --------------------------------      Date: March 14, 2018
9  United States Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25